LAVINA HESTER, Respondent, v. FIDELITY & CASUALTY COMPANY, of New York, Appellant.

Kansas City Court of Appeals, February 6, 1899.

1. **Evidence**: CREDIBILITY OF WITNESSES: WEIGHT OF TESTIMONY: JURY: DEMURRER.  Credibility of witnesses and the weight of testimony are for the jury, as also the inferences from the testimony when it is not uncontradicted, and this case is held rightfully submitted to the jury and that there was evidence to support certain instructions mentioned.

2. **Trial Practice**: INSTRUCTIONS: EVIDENCE: ASSUMPTION OF FACT. An instruction declaring to the jury that there was evidence as to the manner of the shooting and that the jury could not indulge presumptions in relation thereto outside of the facts in evidence, is held properly refused as the evidence showed the manner of shooting disputed and the instruction assumed an undisputed state of facts in that particular.

*Appeal from the Jackson Circuit Court.*—HON. C. O.
TICHENOR, Special Judge.

AFFIRMED.

WARNER, DEAN, GIBSON & McLEOD for appellant.

(1) It is our contention here by these assignments, as
it was at the trial, that there is no case presented by this
record for a jury to pass upon. Lovelace v. Protective
Ass'n, 126 Mo. 114. (2) In this state of the record, we
insist that there are no inferences to be drawn, no contradic-
tions to be reconciled, no disputed facts to be considered, no
conflicting stories to be weighed and taken or rejected. In
other words, no office for a jury to perform in this case, and
therefore upon the testimony as given it was the office of the
court to declare the law, and that declaration must on this
record be for the defendant. This action was instituted upon
the theory that the death of Nicholas Smith resulted from
"accidental means," and not the result of "voluntary expos-
ure to unnecessary danger." Collins v. Fidelity and Casu-
alty Co., 63 Mo. App. 256; Phelan v. Ins. Co., 38 Mo. App.
645; Bean v. Assur. Corporation, 50 Mo. App. 463; DeLoy
v. Ins. Co., 32 Atl. Rep. (Pa.) 1108, 1109; Casualty Co. v.
Harroll, 98 Tenn. 391. The cases announcing this rule are
too numerous to be cited. Campbell v. Van Houten, 44 Mo.
App. 231; Stokes v. Distillery Co., 64 Mo. App. 420. (3)
Instruction number 11, which the court refused to give for
the defendant, was as follows: "The court instructs the
jury that there is evidence in the case as to the manner of
Nicholas Smith's getting shot on the evening of December
23, 1894, and the jury are not at liberty to indulge any pre-
sumption as to the manner of the shooting outside of the
facts and circumstances in evidence." We assert that all the
evidence in the case at bar shows that Smith's conduct was

such that "reasonable and ordinary prudence would pronounce it dangerous." Erhart v. Dietrich, 118 Mo. 427; Brannock v. Elmore, 114 Mo. 65; Lawson on Presumptive Ev., p. 576, rule 119; Speer v. Burlingame, 61 Mo. App. 94; Lee v. Knapp, 55 Mo. App. 403, 404 and 405; Van Buren v. Cockburn, 14 Barbour (N. Y.), 122; Galpin v. Page, 18 Wall. 366; Sackberger v. Grand Lodge, 73 Mo. App. 41.

McDOUGAL & SEBREE and R. O. McLIN for respondent.

(1) These facts, as this court said on the other appeal, were quite sufficient to authorize the submission of the case to the jury. Phelan v. Ins. Co., 38 Mo. App. 640; Lovelace v. Ass'n, 126 Mo. 104; Meadows v. Ins. Co., 129 Mo. 76; Collins v. Ins. Co., 63 Mo. App. 253. Where a plaintiff makes a *prima facie* case he is entitled to have the case submitted to the jury, no matter what the evidence for the defense may be. Gannon v. Laclede Gas Co., 46 S. W. Rep. 968. As the instructions required such facts to be found by the jury before a verdict could be returned for plaintiff, no further definition of the term was necessary, or would have been any aid to the jury whatever. Furthermore, the defendant is in no situation to complain that this term was not defined, for it asked no instruction to that effect. (2) Instruction number 11 requested by defendant was properly refused because the instruction is not the law.

SMITH, P. J.—A reference to the statement made by us of this case when it was here on a former appeal—69 Mo. App. 192—and to such additional matters as we shall hereinafter notice, will, we think, be found sufficient for a correct understanding of the questions presented by the present record.

The defendant objected, when the case was here before, that the trial court had erred in its action denying the demurrer which had been interposed to the evidence. In passing

upon the question thus raised by the defendant's demurrer we reviewed the evidence at some length and reached the conclusion that it was such as to entitle the plaintiff to a submission of the case to the jury. The defendant insists that in passing upon the demurrer to the evidence in the present case we should not be influenced in our action by our ruling on the demurrer in the former case, because the evidence presented by the record now before us is essentially different from that appearing in the record of that case.

An examination of the evidence presented by the present record discloses that about the only fact which it tends to show, different from that shown by the record in the other case, is to the effect that at about dark on the evening of the homicide on Independence Avenue in Sheffield, Biggs was seen to pursue Smith and to throw with great force a rock at the latter as he fled. It is suggested that the three witnesses whose testimony tended to prove these facts were not credible. As to what weight, if any, was to be given the testimony of these witnesses was a question for the jury and not for the court. It was not only contradictory of that of Biggs, but it tended to prove that he was the aggressor at the very inception of the hostilities.

Two women who kept a restaurant near the railway station at Sheffield testified for the first time in the case in substance that fifteen or twenty minutes before the homicide happened Smith, with a gun in his hands, came into their house in an excited condition and made a purchase of a couple of cigars, and, on leaving, remarked, "I will get him or he will get me, the A. P. A. son-of-a-bitch." It appears from the record that the two Brooks testified at each trial to similar declarations made by Smith in their hearing shortly before the homicide. The testimony of the keepers of the restaurant was but cumulative and tended to establish no fact that was not considered by us in passing on the demurrer on the first appeal. It does not appear that the plaintiff testified at the

trial in the present case, but every material fact which the record in the former appeal shows that she testified to was shown in this case by the testimony of other witnesses so that it does not appear for this reason there is any substantial difference in the facts of the two cases. A rather careful analysis of the evidence presented by the two records has convinced us that with the exceptions already noted there is no substantial difference in their facts.

If the colloquy leading up to the homicide took place between Biggs and Smith as the former testified, then there would be no liability under the rule declared in Lovelace v. Ins. Co., 126 Mo. 104, and the other cases cited by defendant. If it were an undisputed fact that when Biggs met Smith near the roundhouse, he told the latter that he did not want to have any difficulty with him and warned him that he was armed and that such latter, after this, persisted in bringing on the difficulty, which he must have known would likely result in fatal consequences to himself, and did so result, then he thereby voluntarily assumed the risk of death. But the evidence in which reliance is had to prove that Smith brought on the difficulty, which resulted in his death, and thereby voluntarily assumed the risk which he knew, or ought to have known as a reasonable man, would likely ensue, can not be said to be undisputed. The relation which the evidence conduces to show Biggs sustained to the homicide was a fact to be considered in determining the truthfulness of his account of how the homicide occurred. It must not be forgotten that he was the only living eye witness to the homicide. The manner and means by which Smith lost his life can be gleaned only from the uncorroborated testimony of Biggs and the circumstances otherwise established by the evidence. It was but natural for Biggs to give such an account of the homicide as would screen himself from all criminal responsibility and the blame and reproach of his fellow men. The inborn and natural inclination to utter the truth in such cases generally yields to the requirements of the law of self-preservation.

When one who commits a homicide has it within his power, by reason of being the only witness thereof, to give such an account of the manner in which it happened as to either show that the homicidal act was morally and legally justifiable, or that he is justly subject to criminal prosecution and conviction for the homicide, it is not difficult, in view of the frailty of human nature, to determine, in such case, which of these alternatives will be adopted. In determining the degree of credit to be given to the testimony of Biggs, considerations of the kind just adverted to were not to be overlooked. Such considerations might have the effect to greatly weaken, if not to overcome, the probative force of his testimony. But, aside from this, there are other facts and circumstances disclosed by the evidence which are calculated to greatly impugn the truthfulness of the account touching the homicide as related by Biggs. Dr. Pearse, an accomplished surgeon who made a *post mortem* examination of the body of Smith, testified that it was impossible for the latter, when shot, to have been in the position which Biggs testified. The testimony of Dr. Pearse is not weakened by the criticism of the learned counsel for the defendant, and especially is this so in view of the fact that the blood stains which were found on the ground near the roundhouse the next morning after the homicide justify the inference that the fatal shot was there received by Smith and not at the place on the railroad track which Biggs testified was the fact. According to the testimony of Biggs, Smith was the aggressor from the inception to the end of the hostilities, and that he acted on the defensive. This is contradicted by the evidence, heretofore referred to, which tended to prove that the former assaulted the latter with a stone.

It appears from the testimony of Biggs that shortly after Smith passed by the house of Brooks on his way to the coal chute, he, Biggs, went to his room and armed himself with an English bull dog pistol, and from there went toward the coal chute himself where he met Smith and the fatal shooting

took place. It further appears from the testimony of Biggs that when he met Smith he was on his way to the roundhouse, which was near the coal chutes, where it was shown by other testimony that the former knew the latter was in the habit of stopping. If Biggs left home with the intention of escorting the young lady to church and that on the way there the thought occurred to him that he might be assaulted by Smith while on his way to church and to avoid such an untoward event he had best take the precaution to see whether Smith was at work at the coal chutes, why did he proceed towards the roundhouse where he knew Smith was in the habit of stopping, instead of going near enough to the coal chutes to satisfy himself as to whether or not Smith was at work? The roundhouse was not on the way from Mrs. Coombs' to the coal chutes. It is difficult to account for the presence of Biggs at the place where, according to his own account, he met and killed Smith, upon any reasonable theory other than that he went there armed for the purpose of renewing the difficulty previously begun by him.

These facts and circumstances with others, to which we have made no reference, convince us that the evidence of the facts upon which defendant relies to show nonliability is not uncontradicted. The testimony given by Biggs, and upon which the defense depends for its main support can not be considered as undisputed evidence. The evidence is, indeed, in very many material particulars quite contradictory.

In this state of the record we can not say that there are no inferences to be drawn, no contradictions to be reconciled, no disputed facts to be considered, no conflicting stories to be weighed and taken or rejected, nor can we say the case was one for the court and not for the jury. Gannon v. Gas Co., 145 Mo. 502; s. c., 47 S. W. Rep. 907; 46 S. W. Rep. 968. We are unable to find any fault with the action of the trial court in submitting the case to the jury for its determination.

EVIDENCE: credibility of witnesses: weight of testimony: jury: demurrer.

The defendant further objects that the court erred in its action giving the plaintiff's second instruction, for the reason there was no evidence to support it. The references hereinbefore made by us to the evidence and the inference to be drawn therefrom is a sufficient answer to this objection of the defendant to the plaintiff's said instruction.

The defendant further objects that the court erred in refusing its eleventh instruction which declared that there was evidence as to the manner of Smith's getting shot and therefore the jury were not at liberty to indulge any presumption as to the manner of the shooting outside of the facts and circumstances in evidence. If the testimony tending to show the manner in which Smith came to his death was undisputed, the instruction might have been well enough. But the rule embodied in the defendant's instruction can not be invoked and applied in a case where, as here, the manner in which the homicide occurred is a disputed question of fact.

TRIAL practice: instructions: evidence: assumption of fact.

It seems to us that the principal vice in the instruction in question is that it assumes in effect that there was undisputed evidence adduced showing the manner in which Smith was shot when it is disclosed by the record that the only evidence of that fact is the testimony of Biggs, which is rendered unsatisfactory if not destroyed by the facts and circumstances disclosed by other evidence. If this instruction had told the jury that if they believed from all the evidence before them that the account of the manner of Smith's death as detailed in the testimony of the witness Biggs was correct, then no presumption could be indulged that Smith came to his death in a manner different from that detailed by the witness Biggs; or, in other words, that such explanation was sufficient to rebut the presumption that Smith was in the exercise of ordinary care when he was shot. If the rule asserted by the defendant's instruction can be successfully invoked and applied in a case like this, then the assassin, having, as under

our law, the right to testify in his own defense, may easily escape the legal consequences of his crime.

The instructions given by the court very fully and clearly covered every issue in the case and fairly met every suggestion made by us in relation thereto, when the case was here on the former appeal. It results from the views expressed by us respecting the defendant's demurrer to the evidence, that the verdict is amply supported by such evidence. The judgment will accordingly be affirmed. All concur.