M. F. OVERSTREET, Respondent, v. LEO MOSER, Appellant.

St. Louis Court of Appeals, March 4, ·1901.

1. **Innkeeper and Guest:** WHO IS A GUEST?    A guest is a transient person who resorts to, and is received at, an inn for the purpose of obtaining the accommodations which it purports to afford.

2. ———: ———: ASSAULT ON GUEST BY SERVANT, ACTION: DAMAGES.  Where the undisputable  facts  are  that appellant kept a public house for the accommodation of the public, that the respondent resorted to this house for some of the accommodations it afforded, and was rightfully in the house, if he was wantonly and ruthlessly assaulted by appellant's servant, the appellant must respond in damages.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The appellant, Leo Moser, is, and for many years has been, the owner and proprietor of the Moser Hotel, situated on Pine street in the city of St. Louis. The hotel is conducted on the European plan and is divided into two apartments, a sleeping or rooming apartment and a restaurant, both in the same building and under the same roof. Both are entered from Pine street (the Main entrance) through the same door. The first floor is taken up by a rotunda, hotel office, restaurant, an elevator, stairway and kitchen. The rooming apartment is on the second floor and is reached either by the elevator or by a stairway running up from the first floor. Persons who wish to avail themselves of the use of a room in the hotel, register at the hotel office on the first floor and pay their rooming bills there. Those who take meals at the restaurant, whether rooming in the hotel or coming in off the street, receive meal checks from the waiters and deliver these checks and make payment for their meals to the cashier of the restaurant, who is stationed to the right of the entrance way to the restaurant. It is optional with a roomer in the hotel to take his meals at the restaurant or go elsewhere. The hotel and restaurant are conducted as separate and distinct apartments, but both under the supervision of appellant to whom they belong. Parties patronizing the restaurant only, are permitted to deposit bundles and packages with the hotel clerk, to be taken care of while they take their meals. The rotunda is provided with writing desks and materials, with benches and chairs, and is used.

by persons who take rooms in the hotel and by such of these who take meals at the restaurant as may desire to do so by the permission of Moser.

Moser had in his employ one Tony Schmidt as a watchman, whose duties were to stand on the stairway leading to the second floor and overlooking the restaurant, and see that none left the restaurant without paying their meal checks and to see that everything was going on right, and if any one came in that had no business there to put him out. The evidence is that this servant was a burly, strong man with a violent temper and that this fact was known to Moser. On November 10, 1895, the respondent and Thomas Stern, both shippers and dealers in live stock, met in St. Louis and agreed to go to Jefferson City that night over the Missouri Pacific Railroad. The train they agreed to take left Union Station at 8:30 o'clock p. m. About four o'clock in the afternoon they went together to the Moser Hotel. Stern registered and went to bed, first requesting respondent to awake him in time to eat his supper and get to the station for their train. Respondent had a bundle (a cloak for his daughter) and this with his hat and overcoat he handed to the clerk, stating that he would not take a bed as he could not sleep in the daytime, that he would eat his supper and sit around until time for his train. To this the clerk assented, took the bundle, hat and overcoat and put the bundle under the counter. Respondent sat around and read until about six o'clock, then ate his supper. After eating his supper he asked the hotel clerk to have Stern called; the clerk told him he certainly would do so and had him called. Stern came down unobserved by respondent and went into the restaurant for his supper. Respondent, fearing that Stern had not been wakened, went to a bell boy and expressed his fears and also asked him for the number of Stern's room. On being informed that it was No. 31, he went up the steps and

into the hall looking for Stern's room. Schmidt followed him and when he had reached the top of the steps ordered respondent down. Respondent asked him if he thought he was a thief; Schmidt again ordered him down, when respondent said "All right Colonel," and started down the steps. After he had descended two or three steps, his evidence is that Schmidt took him by the arm and that he told him to let go. Schmidt did not let him go and he attempted to pull loose when Schmidt took hold of him threw him down the steps with such violence that one of his shins was badly lacerated and torn and one of his shoulders was dislocated; that Schmidt followed him down to the bottom of the steps where he had landed and again grabbed hold of him and tried to put him out of the hotel, when bystanders interfered and Schmidt ran up stairs and disappeared.

To recover damages for the assault and injuries, this suit was brought.

The answer denied that respondent was a guest of the hotel, alleged that respondent wrongfully tried to enter a room of a guest of the hotel and that while Schmidt was peaceably trying to protect the guest from intrusion, respondent cursed and abused him and disturbed the occupants of the hotel and that he first assaulted Schmidt and that the injuries, if any were inflicted, were wholly the result of Schmidt defending himself against the assault made upon him by the respondent. On the part of the appellant the evidence tended to prove that, in his effort to get loose from Schmidt when he (Schmidt) first took him by the arm to lead him down the stairs, the respondent slipped and fell and rolled down the stairs, and that he was not pushed or shoved down by Schmidt. On the evidence and under the instructions of the court, the jury awarded respondent $500 damages.

*R. M. Nichols* for appellant.

(1)   Whether he entered the hotel as a guest or not, appellant is not liable for the willful acts of his servant, or for any altercation brought on by the respondent with the servant. And it is difficult to gather from the evidence anything short of an altercation brought on by respondent with the servant, or of a design on the part of Tony Schmidt to resent Overstreet's command, "Let me tell you a thing, don't you put your hand on me another time," by throwing him down the steps, and for these appellant would not be liable.   Williams v. Palace Car Co., 33 Am. and Eng. R. Cas. 407; Wright v. Wilcox, 19 Wend. 343; Wood v. Railroad, 52 Mich. 402; Curtis v. Denneen, 4 Dak. 245; Douglas v. Stephens, 18 Mo. 363; Garretzen v. Duenckel, 50 Mo. 104.   (2)   The evidence of the discharge of a negligent servant for injury he has committed, is inadmissible and can not be even used as an admission of such servant's negligence.   1 Wharton on Evidence, secs. 40 and 1139; Couch v. Coal Co., 46 Iowa 17; Campbell v. Ryan, 45 Iowa 76; Lee v. Nelms, 57 Ga. 253.

*Thomas T. Fauntleroy, Alphonso Howe, Cornelius H. Fauntleroy and William J. Stone* for respondent.

(1)   "To establish the relation of landlord and tenant the traveller must visit the hotel for the purpose of availing himself of the entertainment offered, that is to obtain refreshments or lodging." Bunn v. Johnson, 77 Mo. App. 599.   The uncontradicted evidence shows that Overstreet was a "traveller," and that he visited the hotel "for the purpose of availing himself of the entertainment offered," that is, to obtain his supper, and to put up at said hotel, and, if possible, take the train that night for Jefferson City.   (2)   The case of Norcross v. Norcross, 53 Maine 169, directly holds " a license does not change the character of the business of those who entertain travellers.   The

possession of it does not make, nor the want of it prevent a person from being an innholder at common law; it is his business alone that fixes the status of a party in this respect.    A license saves an innholder from the penalty of being an innholder without license, but the want of it does not save him from the liability to his guests." Norcross v. Norcross, 53 Maine 169. The test question is, was Overstreet a "traveller or wayfarer," and was he "received and entertained as such." Norcross v. Norcross, 53 Maine 169.    (3) The act of Schmidt in this case was within the line of his duties, employment and agency, and what he did he did under the authority given him by Moser, and Moser does not contradict this, that Schmidt was to use his judgment as to when, and what force was necessary to put people out.    Then, again, the testimony of Tony Schmidt, offered in evidence by appellant, showed that Schmidt was re-employed by appellant, Moser, after his discharge for the assault on respondent, Overstreet, at an advance in salary over what Moser was paying him at the time of the assault.    The jury had a right to infer from this evidence that Moser had ratified and approved Schmidt's conduct in the latter's assault on Overstreet.    Goddard v. Railroad, 57 Maine 205.

BLAND, P. J.—To reverse the judgment appellant assigns as error: first, the submitting to the jury the question whether or not respondent intended to become a guest of the hotel; second, that instructions numbered 1, 2 and 4, given for respondent are erroneous; and, third, the admission of illegal and improper evidence over the objections of appellant.

The instructions objected to are as follows:

"1.   Now if you find and believe from the evidence that on or about the twentieth of November, 1895, the plaintiff went to the hotel of the defendant for the purpose of becoming a guest therein, and that he did become such guest in the defend-

ant's hotel; and if you further find and believe from the evidence that said hotel was at the time a public hotel for the reception of the public generally, and that while the said plaintiff was such guest and in said hotel, one Tony Schmidt was the servant of the defendant in said hotel, and that the said Tony Schmidt, while acting as the agent and servant or employe of the defendant, and while acting in the execution of the duties which the said Tony Schmidt had been employed by the defendant to perform, did make an assault upon and wound and injure the plaintiff, without legal or justifiable excuse for so doing, as explained in instructions numbered 3 and 4, then you should find for the plaintiff."

"2.   You are further instructed that, although you may believe from the evidence that before the plaintiff ascended the stairway to go to the sleeping apartments of the defendant's hotel, he was informed by the persons in charge of the office of said hotel, that he could not be allowed to go to said apartments, and although you shall further believe from the evidence that notwithstanding this information the plaintiff did go up said stairway for the purpose of entering said sleeping apartments, still if you also find from the evidence that in so doing the plaintiff was conducting himself in a quiet and orderly manner, then and in such case you are instructed that the employee of the defendant, in preventing the plaintiff from entering said sleeping apartments, had no right to use any more force than was reasonably necessary to prevent the plaintiff from entering said apartments.   And if you shall find and believe from the evidence that the said employee, in his endeavor to prevent the plaintiff from entering said apartments, used any more force against the plaintiff than was reasonably necessary to prevent him from entering said premises, your verdict should be for the plaintiff.

"4.   You are further instructed that if you believe and

Overstreet v. Moser.

find from the evidence that on or about the twentieth of November, 1895, the plaintiff, M. F. Overstreet, entered the defendant's hotel not as a guest, but for the purpose of awakening his friend, one Thomas Stern, then a guest in said hotel, and that upon entering said hotel he made his business known to those in charge of the office of said hotel and that plaintiff was then and there informed by them that he could not be allowed to go to the sleeping apartments of his friend; but notwithstanding this the plaintiff persisted in and did endeavor to enter the sleeping apartments of said hotel, and that before he arrived at said sleeping apartments the defendant's servant, Tony Schmidt, requested plaintiff to leave said apartments, and that plaintiff refused to leave, and that thereupon the defendant's servant gently laid hands upon him and used only such force as was reasonably necessary to remove him from said apartments of said hotel, and that thereupon the plaintiff assaulted the defendant's servant, and that defendant's servant resisted said assault and that in so doing the plaintiff received the injuries complaned of, then you must find in favor of the defendant."

I. According to respondent's evidence he did not resort to the hotel for the mere purpose of obtaining a meal at the restaurant, but as a transient person he went to the hotel for the purpose of obtaining the accommodations provided for the safe-keeping of his bundles, for the comforts, accommodations and protection afforded by the hotel rotunda as well as for the purpose of obtaining a meal at the restaurant, and that his purposes were made known and assented to by the person in charge of the hotel office. There was, therefore, evidence that he was a guest of the hotel, according to the following definition of a guest of an inn, given by the 16 Eng. and Am. Ency. of Law, p. 576, as the sum of all the definitions given by the judges and text-books, to-wit, "A guest is a transient person who re-

sorts to and is received at an inn for the purpose of obtaining the accommodations which it purports to afford." It was, therefore, proper to submit the question to the jury. Gannon v. Laclede Gas Light Co., 145 Mo. 502; Hadley v. Orchard, 77 Mo. App. 141; Hester v. Fidelity & Casualty Co., 78 Mo. App. 505; Hutt v. Dale, 76 Mo. App. 671; Kahn v. Troll, 72 Mo. App. 321.; Milligan v. R'y Co., 79 Mo. App. 394. But we do not think the right of respondent to recover is at all dependent upon the fact that he was a guest of the hotel, within the legal meaning of the term. The undisputed facts are that appellant kept a public house for the accommodation of the public, that the respondent resorted to this house for some of the accommodations it afforded and was rightfully in the house. This being his status with respect to the hotel, if he was wantonly and ruthlessly assaulted by appellant's servant, the appellant must respond in damages for the malicious act. Haehl v. Wabash R'y Co., 119 Mo. 343; Faber v. Mo. Pac. Ry. Co., 139 Mo. 272; Ephland v. Mo. Pac. R'y Co., 137 Mo. 187; s. c., 71 Mo. App. 587; Knowles v. Bullene, 71 Mo. App. 341.

II. There is no error in the second instruction. It is in exact harmony with both the civil and criminal law, and is in accord with reason, and the instincts of common humanity.

III. The criticism of the fourth instruction is answered by the first paragraph of this opinion.

IV. It is contended by appellant that the court erred by the admission of evidence of the discharge of Schmidt by Moser after the assault was made on respondent. The record does not show that this evidence was objected to or any exceptions saved to its admission. Nor does the record show that there was any objection saved to that part of respondent's evidence in which he stated that Moser told him just after the assault, that Schmidt, previous to that occasion had made an

Discovering no reversible error in the record, the judgment is affirmed. All concur.