MICHAEL FRANK CLANCY V. GEORGE E. BARKER ET AL.*

FILED FEBRUARY 4, 1904. No. 13,174.

1. Innkeepers: DUTIES. In receiving a guest into his hotel, a hotel keeper impliedly undertakes that such guest shall be treated with due consideration for his comfort and safety.

2. ———: TRESPASS·BY SERVANT: LIABILITY. A trespass committed upon the guest in the hotel by a servant of the proprietor, whether actively engaged in the discharge of his duties at the time or not, is a breach of such implied undertaking, for which, the proprietor is liable in damages.

3. Admissions by Manager. It is not within the scope of the authority of a hired manager of·a hotel to bind his employer by admissions concerning such trespass after it had been committed.

* Rehearing allowed. See opinion, p. 91, post.

4. ———. When such admissions are made a day after the trespass, and only remotely connected therewith, they are not admissible in evidence as a part of the *res gestæ.*

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE. *Affirmed as to defendant Barker; reversed as to the other defendants.*

*John O. Yeiser,* for plaintiff in error.

*W. A. Redick* and *W. J. Connell, contra.*

ALBERT, C.

The plaintiff in his petition filed in the district court alleges, in effect, that the defendants were the proprietors and operated a hotel in the city of Omaha; that on the 12th day of January, 1902, he entered such hotel with his wife and infant son for a temporary sojourn therein, whereupon he and the said members of his family were received as guests in said hotel by the defendants; that afterwards, and while they were thus guests in said hotel, the plaintiff's infant son entered a room of the hotel to speak or play with a porter or servant of the defendants, who, at the time, was in said room. Then follow these allegations:

"That the said porter and servant of defendants in said hotel, in said capacity at said time, violated all obligations of hospitality and patience due from said defendants, through said servants, to said infant guest, and the defendants thereby violated their agreement, duty and obligation of law with, and to, the plaintiff by the following conduct, to wit: The said porter, in attempting to have said infant son of plaintiff leave said room and corridor, where defendants did not want him, as instructed, and retire to his mother's room, and to have said infant cease his childish play and pretended annoyance, carelessly, imprudently, rashly, unnecessarily, negligently and foolishly picked up a revolver and pointing it at said infant, said: 'If you handle anything, this is what I will do to

you,' or similar words calculated to frighten the said infant out of his natural and childish playfulness and prevent his touching any of defendants' property, or being about said room or the halls; that the said infant threw up his hands when thus frightened and assaulted, and, by some means unknown to this plaintiff, the said pistol was carelessly and negligently discharged by the said defendants' servant as aforesaid."

The petition contains the usual allegations as to damages.

The defendants by their answers admit that the defendant administrator and corporation were the proprietors of the hotel and were operating it as alleged in the petition; that the plaintiff, his wife and infant son were received into said hotel as guests, at the date alleged in the petition, and that, while the plaintiff and the said members of his family were thus guests at the hotel, the son was seriously injured. But they specifically deny that the person described in the petition as their porter or servant was in their employ at the time the injury occurred, and that he was on duty, or in the performance of any duty, as porter or servant of the defendants at such time. They also specifically deny that the defendant George E. Barker was one of the proprietors of the hotel, or in any way interested in the same, or the operation thereof, save as president of the defendant corporation.

The evidence adduced by the plaintiff sufficiently shows that the plaintiff, his wife and infant son became guests at the hotel, intending to remain but a short time; that about three days after they were received in the hotel, and while they were guests therein, a servant of the proprietors of the hotel, who had waited upon the plaintiff and the members of his family during their stay at the hotel, was playing a harmonica in a room which was not one of those assigned to the plaintiff or any member of his family; that the plaintiff's infant son, attracted by the music, entered the room, the door of which was open; that thereupon the servant who had been playing the

harmonica took up a revolver and pointed it at the boy, saying, "See here, young fellow, if you touch anything, this is what you get." The revolver, by some means, was then discharged, the ball striking the boy, destroying one of his eyes and inflicting upon him other serious injuries. While there is no direct evidence that the person who inflicted the injuries was in the employ of the proprietors of the hotel, the evidence shows that he waited on the guests, carried water to their rooms and rendered such other services as are usually rendered by servants of a certain class about a hotel, and is amply sufficient to warrant a finding that he was the servant of the proprietors, and, for the purposes of this case, would have made him such, perhaps, in the absence of a contract of employment. There is no evidence tending to connect the defendant George E. Barker with the operation of the hotel.

At the close of plaintiff's case the court directed a verdict for the defendants, and from a judgment rendered on such verdict the plaintiff brings the record here for review.

The defendants insist, that the plaintiff having failed to allege that the servant wilfully or maliciously inflicted the injury, it was incumbent on him to show that the injuries were the result of negligence on the part of the servant in the performance of some duty for which he was employed, or in the discharge of some duty which the defendants owed the plaintiff. We think they overlook the theory upon which this action was brought and prosecuted. The plaintiff by his petition and evidence obviously intended to commit himself unreservedly to the theory that his cause of action is *ex contractu.* A contract is alleged in the petition, the wrongful acts of the servant, which resulted in injury to the boy are alleged, not for the purpose of stating a cause of action *ex delicto,* but for the purpose of showing a breach of contract and consequent damages.

This brings us at once to the question, whether the act of the servant, resulting in the injuries complained of, con-

stitutes a breach of the implied contract between the plaintiff and the proprietors of the hotel for the entertainment of the former and his family. By the implied contract between a hotel keeper and his guest, the former undertakes more than merely to furnish the latter with suitable food and lodging. There is implied on his part the further undertaking that the guest shall be treated with due consideration for his safety and comfort. *Rommel v. Schambacher*, 120 Pa. St. 579; *Jencks v. Coleman*, 2 Sumner (U. S. C. C.), 221. In *Commonwealth v. Power*, 7 Met. (Mass.) 596, Shaw, C. J., said:

"An owner of a steamboat or railroad, in this respect, is in a condition somewhat similar to that of an innkeeper, whose premises are open to all guests. Yet he is not only empowered, but he is bound, so to regulate his house, as well with regard to the peace and comfort of his guests, who there seek repose, as to the peace and quiet of the vicinity, as to repress and prohibit all disorderly conduct therein; and of course he has a right, and is bound, to exclude from his premises all disorderly persons, and all persons not conforming to regulations necessary and proper to secure such quiet and good order."

The foregoing language is quoted with approval in *Bass v. Chicago & N. W. R. Co.*, 36 Wis. 450. Substantially the same language is employed by the court in *Dickson v. Waldron*, 135 Ind. 507, 34 N. E. 506. See also *Norcross v. Norcross*, 53 Me. 163; *Pinkerton v. Woodward*, 33 Cal. 557, 585; *Russell v. Fagan*, 7 Houst. (Del.) 389; *Pullman Palace Car Co. v. Lowe*, 28 Neb. 239. The foregoing also show that the duties of a hotel keeper to his guests are regarded as similar to the common law obligation of a common carrier to his passengers. As regards the duty of a common carrier to his passengers, in *Dwinelle v. New York C. & H. R. R. Co.*, 120 N. Y. 117, 127, the court said:

"As we have seen, the defendant owed the plaintiff the duty to transport him to New York, and, during its performance, to care for his comfort and safety. The duty of protecting the personal safety of the passenger and pro-

moting, by every reasonable means, the accomplishment of his journey is continuous, and embraces other attentions and services than the occasional service required in giving the passenger a seat or some temporary accommodation. Hence, whatever is done by the carrier or its servants which interferes with . or injures the health or strength or person of the traveler, or prevents the accomplishment of his journey in the most reasonable and speedy manner, is a violation of the carrier's contract, and he must be held responsible for it."

To the same effect are the following: *Pittsburg, F. W. & C. R. Co. v. Hinds,* 53 Pa. St. 512; *Goddard v. Grand Trunk R. Co.,* 57 Me. 202; *Chamberlain v. Chandler,* 3 Mason (U. S. C. C.), 242; *Pendleton v. Kinsley,* 3 Cliff. (U. S. C. C.) 417; *Bryant v. Rich,* 106 Mass. 180; *Chicago & E. R. Co. v. Flexman,* 103 Ill. 546; *Southern Kansas R. Co. v. Rice,* 38 Kan. 398. An examination of the foregoing cases will show, we think, that the reasoning applies with equal force to a hotel keeper as regards his duties to his guests. Those duties spring from the implied terms of his contract and a failure to discharge them, and while it may in some instances amount to a tort, it amounts in every instance to a breach of contract.

If then the defendants were under a contractual obligation that the plaintiff and his family should be treated with due consideration for their comfort and safety, the act of the servant, resulting in the injuries complained of, obviously amounts to a breach of contract. That the wrongful act was committed by a servant is wholly immaterial. The rule which requires that a guest at a hotel be treated with due consideration for his comfort and safety would be of little value if limited to the proprietor himself. As a rule he does not come in contact with the guests. His undertaking is not that he personally shall treat them with due consideration, but that they shall be so treated while inmates of the hotel as guests; and if they be not thus treated there is a breach of the implied contract, whether the lack of such treatment is the result

of some act or omission of the proprietor himself, or of his servant or servants.

Neither do we deem it material whether the servant, at the time of the injury, was actively engaged in the discharge of his duty as servant or not. He was a servant of the proprietor and an inmate of the hotel; his duty as to the treatment to be accorded the guests of the hotel was a continuing one and rested upon him wherever, within the hotel, he was brought in contact with them. To hold otherwise would be to say that a guest would have no redress for any manner of indignity received at a hotel, so long as it was inflicted by a servant not actively engaged in the discharge of some duty. The following from *Dwinelle v. New York C. & H. R. R. Co.*, 120 N. Y. 117, is peculiarly applicable to this point:

"The idea that the servant of a carrier of persons may, in the intervals between rendering personal services to the passenger for his accommodation, assault the person of the passenger, destroy his consciousness, and disable him from further pursuit of his journey, is not consistent with the duty that the carrier owes to the passenger, and is little less than monstrous. While this general duty rested upon the defendant to protect the person of the passenger during the entire performance of the contract, it signifies but little or nothing whether the servant had or had not completed the temporary or particular service he was performing or had completed the performance of it, when the blow was struck. The blow was given by a servant of the defendant while the defendant was performing its contract to carry safely and to protect the person of the plaintiff, and was a violation of such contract."

It is equally immaterial to this case, we think, whether the shooting was accidental or wilful. The servant in pointing a loaded gun at the boy committed a trespass, and as a result of such trespass inflicted serious and permanent injuries on the child. His acts, therefore, constituted a breach of the implied undertaking of his employers to treat the plaintiff and his family with due consideration for

their safety and comfort, for which breach his employers are liable in damages.

We are aware that there are cases holding contrary to the foregoing conclusion, but they do not seem to us to be based on sound reasons, nor upon just considerations of public policy, and are contrary to the weight and trend of modern authority.

The plaintiff offered to prove by one of his witnesses that the day following the accident one Mr. Bowman, the manager of the hotel, told the witness "that he had told the boys (referring to the porters and bellboys of the hotel) time and again to keep the kid (meaning the plaintiff's son) out of the elevator, halls and rooms of the hotel, and to keep him in his mother's room." The offer was rejected, and the plaintiff contends that the ruling of the court in that behalf is erroneous. We do not think so. It was not within the scope of the authority of the manager to bind his employer by the admission or declaration sought to be proved, and it was too remote in point of time and too detached from the injury to be admissible as a part of the *res gestæ.* *Gale Sulky Harrow Co. v. Laughlin,* 31 Neb. 103; *Commercial Nat. Bank v. Brill,* 37 Neb. 626; *Collins v. State,* 46 Neb. 37; *City of Friend v. Burleigh,* 53 Neb. 674.

As to the defendant George E. Barker, as we have seen, there is no evidence which would warrant a verdict against him. Hence, so far as he is concerned, the judgment of the district court is right, but as to the other defendants it is recommended that the judgment be reversed and the cause remanded for further proceedings according to law.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court, as to the defendant George E. Barker, is affirmed and, as to the other defendants, the judgment is reversed and the cause remanded for further proceedings according to law.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed May 3, 1905. *Former judgment adhered to.* BARNES, J., *dissenting:*

1. **Master and Servant: TORTS OF SERVANT.** The relation of master and servant does not render the master liable for the torts of the servant, unless connected with his duties as such servant or within the scope of his employment.

2. **Innkeepers: ASSAULT BY SERVANT: LIABILITY.** It is the duty of a hotel keeper to protect his guests while in his hotel against the assaults of employees who assist in the conduct of the hotel and in the care and accommodation of the guests. If damages result from such assault the hotel keeper is liable therefor.

SEDGWICK, J.

Since the filing of the former opinion in this case, *ante,* p. 83, the question principally discussed therein, and arising out of the same transaction, has been decided by the United States court of appeals for this circuit, *Clancy v. Barker,* 131 Fed. 161. The opinion of that court prepared by Judge Sanborn strongly states the reasons which led the majority of the court to the conclusion that the hotel company ought not to be held liable. In a dissenting opinion Judge Thayer upholds the views expressed in the former opinion of this court.

1. The first ground urged by counsel for holding the defendant liable we think is satisfactorily discussed in the majority opinion of that court. This relates to the doctrine of *respondeat superior* derived from the relation of master and servant. If there had been evidence showing that it was the duty of the employees of the hotel to prevent children from entering and playing in rooms which were not assigned to them, it might perhaps be contended that the boy Lacy was acting within the scope of his employment when the accident occurred. The evidence offered as tending to show that he was so acting was properly excluded, as shown in the former opinion, and it does not appear that there was any other evidence in the record upon this point.

2. Whether the relation that exists between a keeper of a hotel and his guests makes the former liable for any misconduct of his employees, by which his guests are injured while they are in the hotel and are in his care, is a more difficult question. It is admitted that common carriers under such circumstances are liable. It is said that the reason for this is that the passenger places himself in the care of the employees of the carrier, and is continually in their care, so that whatever they do while the passenger is being transported is within the scope of their employment. The hotel keeper is also bound to bestow reasonable care for the safety and comfort of his guests. He is not an insurer of his guests; but neither is the carrier an insurer of his passengers. The carrier of course is bound to use extraordinary care or, as is sometimes said, the utmost care for the safety of his passengers. The business engaged in is a dangerous one and the care should be in proportion to the danger that exists. In this respect there is a difference between the two situations, but both perform public duties, and are bound to serve any individual who requires their service and suitably applies for it. The hotel keeper offers accommodations for strangers who are not acquainted with his employees and who have no voice in their selection. He undertakes to provide them with suitable accommodations and with at least a certain degree of care for their comfort and safety. He has some control over their persons and conduct. He must not allow such conduct on their part as will interfere with the reasonable hospitality which he owes to other guests. It may be that the carrier has greater control over the persons and conduct of passengers, but this idea seems to be exaggerated in some of the opinions. In what sense does the porter of a sleeping car have charge of the occupants of the car and have control of their conduct and behavior? Surely, if it is different in degree from the control that the hotel keeper has over his guests, it is not much different in kind. The hotel keeper is under obligation to protect his guests from danger when it is reasonably within his power to do so;

and is under obligation to select such employees as will look after the safety and comfort of his guests, and will not commit acts of violence against them so far as is reasonably within his power. It would seem that to relieve him from liability for injuries done to his guests by his employee, upon the sole ground that the employee was not then in the active discharge of some specific duty in connection with his employment, and hold the carrier responsible under similar conditions, is making a fine distinction. The liability of a common carrier under such circumstances is a doctrine of modern growth. There does not appear to be reason for establishing such doctrine that would not equally apply under modern conditions to the relations between an innkeeper and his guests.

Notwithstanding the great respect due to the court which has reached a contrary conclusion in *Clancy v. Barker, supra,* we conclude that our former decision ought to be adhered to.

FORMER JUDGMENT ADHERED TO.

BARNES, J., dissenting.

In this case I find myself unable to concur in the majority opinion, which adheres to our former decision. While I concurred in that decision when it was rendered, on a reexamination of the question as presented on the rehearing, I am convinced that the defendant should not be held liable. The facts which are the basis of the plaintiff's cause of action, briefly stated, are as follows: The plaintiff, Michael F. Clancy and his wife, with their infant son Freeman, who was about six years old, were stopping at the Barker hotel in the city of Omaha, and had been guests at the hotel for several days prior to the accident complained of. About 8:30 o'clock of the evening of January 15, 1902, Freeman left his mother's room and went down the elevator to the first floor of the hotel, as he says, "To get some ice water." Reaching that floor, he passed by a room where a boy of the name of Lacy, who was employed as a porter

or bellboy at the hotel, was playing a harmonica; the door
being ajar he entered this room, apparently to satisfy his
childish curiosity; another boy, who sometimes ran the
elevator, was also in the room; both of these employees
seem to have been off duty at the time, and engaged in
amusing themselves in a room not occupied by any of the
guests of the house.  As the Clancy boy entered the room,
young Lacy said to him, apparently in jest, "See here,
young fellow, if you touch anything, this is what you get,"
at the same time pointing a pistol at him.  The pistol was
at that instant accidentally discharged, the ball striking
the boy Freeman in the head, destroying one of his eyes
and inflicting other injuries upon him which, however, did
not prove fatal; and this action was brought by the father
to recover damages alleged to have been sustained by him
by reason of these facts.

The prevailing opinion does not place the right of re-
covery in this case on the ground of negligence or tort, for
no negligence on the part of the defendants is alleged or
proved; but bases such right solely on an alleged breach
of the implied contract of an innkeeper that his guest shall
be treated with due consideration for his comfort and
safety; and so holds the proprietors of the hotel liable to
both the father and his infant son for the damages sus-
tained by them.

It must be conceded that, until recent years, the whole
trend of authority supported and adhered to the common
law rule that an innkeeper is not an insurer of the safety
of his guest against injury, and that his obligation is
limited to the exercise of reasonable care for the safety,
comfort and entertainment of his visitor.  *Calye's* case,
8 Rep. (4 Coke) 32; *Sandys v. Florence,* 47 L. J. C. P.
598; *Weeks v. McNulty,* 101 Tenn. 495; *Curtis v. Dinneen.*
4 Dak. 245; *Sheffer v. Willoughby,* 163 Ill. 518; *Gilbert v.
Hoffman,* 66 Ia. 205; *Overstreet v. Moser,* 88 Mo. App. 72;
*Stanley v. Bircher,* 78 Mo. 245; *Stott v. Churchill,* 15
Misc. (N. Y.) 80, 36 N. Y. Supp. 476; *Sneed v. Moorehead,*
70 Miss. 690.  It is claimed, however, that the more recent

cases have changed the rule, and to support this view we are referred, in the original opinion, to *Rommel v. Scham-bacher,* 120 Pa. St. 579. In that case it appears that on the evening of the 9th of August, 1884, the plaintiff, William Rommel, a minor, entered the tavern of Jacob Scham-bacher, and there found one Edward Flanagan; they both became intoxicated on the liquor furnished them by Scham-bacher. While the plaintiff was standing outside of the bar, engaged in conversation with the defendant, Flanagan pinned a piece of paper to his back and set it on fire. The consequence was that Rommel's clothes were soon in flames, and before they could be extinguished he was badly injured. On those facts it was held that the proprietor of a saloon is liable for injuries sustained by one who enters therein and becomes intoxicated, by reason of another, who also became intoxicated there, and who, in full view of the proprietor, attached a piece of paper to the former and set it on fire.

The sole ground of holding the proprietor liable was that he furnished the liquor which caused the intoxication of the two men, and allowed one of them, in his presence, to attach the paper to the other and set it on fire, when he could, and should, have prevented it. So it will be seen that there is nothing in the facts of that case, or in the matter actually decided, which supports the prevailing opinion.

Our attention is also called to the case of *Commonwealth v. Power,* 7 Met. (Mass.) 596, in which Shaw, C. J., said:

"An owner of a steamboat or railroad, in this respect, is in a condition somewhat similar to that of an innkeeper, whose premises are open to all guests. Yet he is not only empowered, but he is bound, to so regulate his house, as well with regard to the peace and comfort of his guests, who there seek repose, as to the peace and quiet of the vicinity, as to repress and prohibit all disorderly conduct therein; and of course he has a right, and is bound, to exclude from his premises all disorderly persons, and all

persons not conforming to regulations necessary and proper to such quiet and good order."

This language, it seems to me, comes far short of justifying the conclusion announced by the majority.

The case of *Dickson v. Waldron*, 135 Ind. 507, is also cited to sustain the prevailing opinion. The facts in that case were: George A. Dickson and others were lessees and managers of the Park theater in the city of Indianapolis; Waldron came to the box office of the theater and applied for a 10-cent ticket, giving the ticket seller, one Joseph Gordon, a silver dollar, and receiving from him his ticket and only seventy cents in change; one John Dickson was in the box office at the time with the ticket seller, and was in charge of and conducting the theater for and on behalf of the lessees. Waldron demanded of the ticket seller the right change; an altercation ensued; and the janitor of the theater, who was also a special policeman, was ordered by Dickson, who had reached through the window and grabbed Waldron and slapped him in the face, to arrest Waldron for a "vag." The janitor thereupon struck Waldron, knocked him down and beat him severely; some one interfered, and the janitor withdrew; then Gordon came out of the ticket office and, in the presence of the manager, assaulted Waldron and beat him shamefully; thereafter the janitor arrested Waldron and took him to the police station. On these facts it was held, as in *Rommel v. Schambacher, supra*, that the proprietor of the theater was liable for the injuries sustained by Waldron.

In the foregoing cases, and in some others, the courts have made use of the expression, "The liability of an innkeeper is like that of a common carrier." But it is nowhere held that the kind and extent of the liability of the innkeeper is the same as that of a common carrier. All of the other cases referred to are actions where common carriers were sued for injuries to passengers while being transported.

Our attention was also called, on the rehearing, to the case of *Curran v. Olson*, 88 Minn. 307, as sustaining plain-

tiff's contention.   That was a case where a patron of a
saloon fell asleep in his chair and a third person poured
alcohol, which was furnished by the bartender in charge
of the defendant's business, on the foot of the sleeper and
set it on fire.   The saloon keeper was held liable because the
tort was committed in the presence and with the assent
of his managing agent, when it was the duty and within
the power of the agent to have prevented it.   So, it seems
to me, that in none of the cases to which our attention has
been directed are the facts the same, or similar, to those
in the case at bar, and I am of opinion that none of them
fairly support the rule announced by the majority.   On
the other hand, I believe the great weight of authority to
be with the defendants, and that the rule that an innkeeper
is not an insurer of the safety of the person of his guest
against injuries, and that his contract obligation is limited
to the exercise of reasonable care for the safety, comfort
and entertainment of his visitors, should be adhered to.
While my associates state that they do not intend to make
the innkeeper an insurer of the safety of the guest, it seems
clear to me that such is the effect of the prevailing opinion.

The case of *Clancy v. Barker*, 131 Fed. 161, which was
an action for the infant Freeman Clancy, by the plaintiff
herein, as his next friend, to recover for his injuries oc-
casioned by the accident, which is the basis of this action,
is commented on by the majority, and I take this occasion
to review it.   It was there held by the United States circuit
court of appeals that the defendants were not liable.   The
plaintiff's contention there was the same as here, and
Judge Sanborn, who wrote the prevailing opinion, said:

"The crucial question here, therefore, is whether or not
an innkeeper is an insurer of the safety of the person of
his guest while the latter remains in his hotel against the
negligent and wilful acts of his servants, when they are
acting without the course and without the actual or ap-
parent scope of their employment.   *   *   *   Counsel for
the plaintiff insists that the liability of the innkeepers
should be extended in the case at bar even beyond that of

common carriers, so that the defendants should be held liable for the injuries inflicted by the wilful or careless act of their servant when he was not acting within the course or scope of his employment. The argument in support of this contention is that common carriers are liable for the negligent or wilful acts of their servants to whom they intrust the care, custody, and control of the passengers they transport, and that the liability of innkeepers to their guests is similar to that of carriers to their passengers. There are many reasons, however, why this argument is not persuasive, and why it fails to demonstrate that an innkeeper insures the safety of the persons of his guests against injuries inflicted by his servants when they are not engaged in the discharge of their duties as employees. * * * There is a marked difference in the character of the contracts of carriage on a railroad or steamboat and of entertainment at an inn, and a wide difference in the relations of the parties to these contracts. In the former, the carrier takes and the passenger surrenders to him the control and dominion of his person, and the chief, nay, practically the only, occupation of both parties is the performance of the contract of carriage. For the time being all other occupations are subordinate to the transportation. The carrier regulates the movements of the passenger, assigns him his seat or berth, and determines when, how, and where he shall ride, eat, and sleep, while the passenger submits to the rules, regulations, and directions of the carrier, and is transported in the manner the latter directs. The contract is that the passenger will surrender the direction and dominion of his person to the servants of the carrier, to be transported in the car, seat, or berth and in the manner in which they direct, and that the latter will take charge of and transport the person of the passenger safely. The logical and necessary result of this relation of the parties is that every servant of the carrier who is employed in assisting to transport the passenger safely, every conductor, brakeman, and porter who is employed to assist in the trans-

portation, is constantly acting within the scope and course of his employment while he is upon the train or boat, because he is one of those selected by his master and placed in charge of the person of the passenger to safely transport him to his destination. Any negligent or wilful act of such a servant which inflicts injury upon the passenger is necessarily a breach of the master's contract of safe carriage, and for it the latter must respond. But the contract of an innkeeper with his guest, and their relations to each other, are not of this character. The innkeeper does not take, nor does the guest surrender, the control or dominion of the latter's person. The performance of the contract of entertainment is not the chief occupation of the parties, but it is subordinate to the ordinary business or pleasure of the guest. The innkeeper assigns a room to his guest, but neither he nor his servants direct him when or how he shall occupy it. * * * The agreement is not that the guest shall surrender the control of his person and action to the servants of the innkeeper, in order that he may be protected from injury and entertained. It is that the guest may retain the direction of his own action, that he may enjoy the entertainment offered, and that the innkeeper will exercise ordinary care to provide for his comfort and safety. * *. * The natural and logical result of this relation of the parties is that when the servants are not engaged in the course or scope of their employment, although they may be present in the hotel, they are not performing their master's contract, and he is not liable for their negligent or wilful acts."

An examination of the cases involving the liability of common carriers, of owners of palace cars, of steamboats, and of theaters, cited in the prevailing opinion, discloses that the defendants' servants in every case were acting within the course or scope of their employment, and none of them hold the defendants liable for the wilful or negligent acts of their employees beyond that scope. I am much impressed with the prevailing opinion of Judge

Sanborn. The reasoning employed by him appears to be sound and is supported by the great weight of authority in both England and this country; and while I do not consider myself bound by that opinion, yet it seems to me to announce the better rule. I regret that different courts should arrive at different and inconsistent conclusions from the same facts, and practically in the same case.

Again, the supreme court of Dakota in *Curtis v. Dinneen, supra*, directly decided a similar question to the one presented in this case in accordance with the general rule, and in favor of the innkeeper. In that case the plaintiff, while a guest at the defendant's hotel, was assaulted by the defendant's husband, who was employed in and about the house, but not in the course of his employment. The court said:

"It is doubtless good legal doctrine that a master is liable to answer in a civil action for the tortious or wrongful act of his servant if done in the course of his employment in the master's service, even though the master did not know of or authorize such act, or may have disapproved of or forbidden it. The act must be done in the execution of the authority given by the master and in pursuit of the master's business, and must be within the scope of the servant's employment, or, unless it be ratified by the master, he (the master) will not be liable therefor."

And so it was held that an innkeeper is not liable for assault and battery committed on a guest by one of his servants, where the assault was not within the line of the servant's duty, and was not advised or countenanced by the master.

In a still later case, *Rahmel v. Lehndorff*, 142 Cal. 681, the supreme court of California, in a well considered opinion, held that an assault by a waiter in a hotel on a guest is not within the scope of the waiter's employment, or within the real or supposed scope of his duties so as to render the innkeeper liable for the tort. An innkeeper is not bound to protect his guests from acts of violence of

his servants, in the absence of negligence in employing a violent or disorderly person.

To my mind there are many other reasons why the contractual liability of innkeepers to their guests should not be held to be coextensive with, and the same as that of common carriers to their passengers. The agencies employed by common carriers to transport their passengers are extremely hazardous, and are not in any manner under the control of the passenger himself. They are used and controlled wholly by the servants of the carrier in transporting the passenger to his place of destination. During every moment of his journey he is in charge and under the control of the employees of the carrier, and so the carrier is held liable for the slightest negligence; while one who is the guest of the modern hotel or inn has the utmost freedom of movement; there is no danger or hazard connected with the business, and when a room is assigned to the guest it is his own to occupy or not, as he pleases; it is his domicile, from which he may exclude all intruders; and when, as in many cases, the guest lives constantly at the hotel, it is his home from which he may depart and to which he may return at any time, and at all hours of both day and night. Again, there are at all times other guests of the house with whom he necessarily is thrown in contact, and from whom he may possibly receive an injury; and it is believed that our former opinion goes to the extent of holding the proprietor of the hotel liable for such injuries, without any negligence on his part. The modern hotel is, to a certain extent, a public place. Any one may enter it for any lawful purpose, without the consent of the proprietor, and leave it without let or hindrance; and yet the effect of the prevailing opinion is that, for any injury inflicted by such a person to a guest of the house, the innkeeper would be liable, even if he had no reason to expect it, and could not in any way have prevented it. It seems clear to my mind that an ordinary nonhazardous and useful occupation should not be required to bear such an extraordinary burden.

Again, the thought intrudes itself, that the person injured in this case was an infant of such tender years that the defendants had the right to expect that its parents, who in reality were their guests, would prevent him from entering the rooms of the servants or other guests, or getting into places of danger; in other words, from roaming about the hotel at will, and unattended. It can hardly be said that the proprietors, knowing that the child was with his mother, and under her immediate care and control, impliedly contracted to relieve her of that duty, assume it themselves, and insure him against injury while in their hotel.

After mature reflection and a careful examination of the authorities, I am of opinion that the defendants should not be held liable for the injury complained of.

For the foregoing reasons, it seems clear to me that our former opinion should be vacated, and the judgment of the district court should be affirmed.