No. 8230.

## TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY *v.* JACKSON.

RAILROAD COMPANY.—*Liability for Wilful Acts and Torts of Agents and Servants.—Corporation.—Principal and Agent.—Ratification.*—A corporation is liable for the wilful acts and torts of its agents, done to the injury of others, within the general scope of their employment, though the particular acts had not been previously authorized, and have not been ratified since, by the corporation.

SAME.—*Contract with Passenger.—Breach.—Negligence.*—The contract of a railway company with its passenger is to carry safely; and if, through the negligence or wilful act of the conductor or of a brakeman, or of both, a jet of water is dashed upon the passenger while being carried, it is a breach of the contract.

SAME.—*Evidence.—Previous Declaration of Servant.*—It being charged in the complaint that plaintiff, while being carried on the defendant's railroad,

Terre Haute and Indianapolis Railroad Company *v.* Jackson.

was drenched with water, and that it was done wilfully, and evidence tending to show that it was done by the direct procurement of the brakeman, it was competent to prove a previous declaration by the brakeman of his purpose to do it.

S.\ME.—*Evidence of Injury.*—In an action against a railroad company for having wrongfully drenched the plaintiff, while a passenger, with water, it being specially charged that the injury caused a recurrence of dizziness and vertigo, it was competent, without offering medical testimony on the subject, to prove, among instances of such dizziness after the injury, the falling of the plaintiff upon a sidewalk.

JURY.—*Communication of Court With.—Coercion of Agreement by Threat.— Practice.*—It is error for the court, without the consent of a party, to send word to the jury, by the bailiff in charge, that if they do not agree to a verdict, he will keep them together until Saturday—that is to say, for four days. Such threat is an improper effort to coerce into an agreement.

From the Clay Circuit Court.

*J. G. Williams,* for appellant.

*C. C. Matson* and *H. H. Mathias,* for appellee.

WOODS, J.—The questions presented for decision in this case arise upon the overruling of the appellant's motion for a new trial.

The action was for injuries alleged to have been sustained by the appellee whilst a passenger upon a train of the appellant. The particular injury charged was the throwing of a jet of water from a water tank upon the appellee, it being alleged in one paragraph of the complaint that it was done wrongfully and purposely by the servants of the defendant in charge of the train, and in a second paragraph, that it was done carelessly and negligently.

After reviewing the evidence, counsel for the appellant says:

"All these circumstances seem to show conclusively that if there was any intention on the part of any one to wet Mr. Jackson, it was confined solely to Dougherty. He spoke of it before leaving Fillmore. He, alone, hinted anything about the half dollar, and he alone was instrumental in getting Jackson to go to the door of the caboose.

" The testimony, as a whole, justifies the conclusion that

Jackson was wet, whilst Rockwell was letting some water into the caboose from the tank, for the purpose of washing it out so as to render it suitable for him and the brakeman to sleep in that night at Indianapolis; and that, had not Jackson been standing in the door of the caboose, he would not have been wet. Under this state of facts, the verdict should have been for the defendant.

" Whilst it is true that a railroad company is liable for the wilful acts of its servants, done within the scope of their employment, and whilst in the discharge of their duty, it is not responsible for the wilful acts of its servants done when not acting within the scope of their employment.

" There is not a syllable of testimony showing that the conductor or brakemen of a freight train are required or authorized to wash out the cars of the company for their private accommodation."

Rockwell was the conductor, and Dougherty a brakeman in charge of the train.

The doctrine is now well settled, " that a corporation is liable 'for the wilful acts and torts of its agents committed within the general scope of their employment, as well as acts of negligence; and that the corporation is thus bound, although the particular acts were not previously authorized, nor subsequently ratified, by the corporation." *The Jeffersonville R. R. Co.* v. *Rogers,* 38 Ind. 116 ; *The American Express Company* v. *Patterson,* 73 Ind. 430, and cases cited. It is, therefore, immaterial whether the conductor or brakeman had been required or authorized to wash out the cars of the company for any purpose. The appellant had undertaken to carry the plaintiff, as a passenger, upon its train, and was bound to do it safely. For this purpose, the appellant was represented by its agents in charge of the train, and if they did anything inconsistent with the safe carriage and delivery of the plaintiff, at his destination, unharmed, the appellant, upon the plainest principles of law, as well as good policy, is liable for the injury. The drenching of a passenger with water, either neg-

ligently or wilfully, is a clear and direct breach of the duty to carry safely, and it is immaterial upon the question of the company's liability, whether it resulted from the fault of the brakeman alone, or of the conductor, or of both of them. They were each agents of the company for the running of the train, and the company, therefore, responsible for the acts of either, or both, in so far as such acts affected the passenger.

It follows that if the conductor was faultless in raising the valve and in throwing the water into the caboose, which could hardly be, when he knew there was a passenger there liable to be injured, and the brakeman designedly procured the plaintiff to go to the door of the caboose in order that the water might strike him, the company is clearly liable for the injury; that the evidence tends to show this state of facts, is not disputed.

It is next insisted that the jury awarded excessive damages. We can by no means say so.

The plaintiff, over the objection of the appellant, was permitted to prove by a competent witness a declaration of the brakeman, Dougherty, made to a fellow brakeman, on the train, but some distance from, and some hours before the arrival of the train at, the place where the injury was incurred, to the following effect: "I will tell you how we will get some tobacco. This old man with the hogs looks like a liberal old fellow, and we will tackle him for a half dollar for watering his hogs, and if he don't come down we will give him a wetting."

We are of the opinion that this declaration of the purpose of the brakeman to do the act complained of, made during the performance of the duty to carry the plaintiff, which the company had undertaken through Dougherty's agency to perform, was competent. It tended directly to prove the averment that the wrong was wilfully inflicted, as charged in one paragraph of the complaint; and there was other evidence tending to show that the brakeman communicated his pur-

pose to the conductor, and that the two acted in concert for the purpose of accomplishing the wrongful act.

After the act was done and past, the brakeman could not of course make a declaration which would be competent evidence against the company, but, under the issues, his purpose in doing the act was material, and it would seem that there could be no better evidence of that purpose, than his own declaration, made as in this instance the evidence in question shows it was made.

It is next insisted that the court erred in refusing to strike out the testimony of a witness, who testified that some months after the alleged injury the plaintiff fell in front of the witness's store and cut his head considerably.

The plaintiff testified that some years before the injury complained of, he had been subject to spells of dizziness or vertigo, of which, however, he had been for a long time free, and that after the injury there was a recurrence of this or similar trouble, and, as an instance of its effect upon him, detailed the fall testified to by the other witness.

The argument made against this testimony is, that it was not supplemented by medical or scientific evidence that the injury suffered might have produced the alleged consequence. It is plain, however, that this is no argument against the competency, however good against the force, of the evidence. Jurors have the right to draw inferences on such subjects from pertinent proofs in the light of common experience, unaided by doctors or other scientists.

The complaint specifically charged that the plaintiff did suffer, in consequence of the wrong done him, a nervous shock, and a recurrence of dizziness and vertigo; and, in support of this averment, it was competent to show the fall referred to by the witness. Whether proof of the injury received in the fall was admissible, is quite a different question, which we are not called on to decide.

Questions are made in reference to instructions given and refused, but, in the main, they are covered by what has been

said, and as the judgment must be reversed on other grounds, we will not examine them.

The record shows that after the jury had retired, and had been deliberating on their verdict for about nine hours, the court, without the knowledge or consent of the appellant, "caused the jury to be informed through the bailiff having them in charge, that if they did not agree upon a verdict the court would keep them there until Saturday night, a period of four days, to which action of the court the defendant, at the proper time, as soon as her attorneys learned of such action, objected and excepted."

This action of the court can not be justified. It constituted—as it must have been intended it should—a kind of coercion upon the jury, which was inconsistent with their proper independence.

Counsel for the appellee, conceding that the action of the court "may have been indiscreet," insist that it does not appear that it was prejudicial to the appellant, and that we must presume that it was harmless. But we can not so treat the matter. A plain error was committed. Its plain tendency was to influence the jury. The judge intended to influence them, else he would not have sent the message. It is not apparent how the appellant could show that any or what harm resulted. Under the circumstances, the presumption is that the jury was influenced, and, if any showing was possible or admissible, it should have come from the appellee.

The judgment is reversed with costs, and with instructions to grant a new trial.