CLANCY v. BARKER et al.

(Circuit Court of Appeals, Eighth Circuit. May 28, 1904.)

No. 1,941.

1. INNKEEPERS—LIABILITY TO GUESTS.

Innkeepers are not insurers of the safety of the persons of their guests. The limit of their liability is for the exercise of reasonable care for the safety, comfort, and entertainment of their visitors.

2. SAME—NOT LIABLE FOR ACTS OF SERVANTS BEYOND THE SCOPE OF THEIR EMPLOYMENT.

Innkeepers do not contract to insure the safety of their guests against injuries which are inflicted upon them by the negligent or willful acts of their servants beyond the scope and course of their employment, and for such acts they are not liable in damages when they have exercised reasonable care to prevent them.

3. SAME—LIABILITY TO GUESTS—FACTS.

A boy about six years of age, a guest of the defendants at their hotel, wandered out of the room assigned to him, and into a room in which a bell boy or porter of the defendants was engaged in playing a harmonica for his own amusement, and the latter accidentally or willfully shot the former with a pistol.

Held, the bell boy was not acting within the course or within the apparent or actual scope of his employment at the time of the shooting, and the innkeepers were not liable for the injury he inflicted.

Thayer, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

John O. Yeiser, for plaintiff in error.

William A. Redick, for defendants in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. This case was determined in the lower court on a demurrer to the evidence; the trial court holding, on the conclusion of the plaintiff's testimony, that there was no substantial evidence warranting a recovery. It accordingly directed a verdict in favor of the defendants. This action was taken on testimony which tended to establish, and did establish, the following facts:

Freeman Clancy, in whose behalf the action is brought, at the time of the accident hereafter described, was about six years old, and was stopping with his parents at the Barker Hotel, in the city of Omaha, Neb.; the father, mother, and son having been guests at the hotel for a few days prior to the accident. During the evening of January 15, 1902, about 8:30 p. m., he went down the elevator from one of the upper floors, where the room occupied by his parents was located, to the ground floor of the hotel for the purpose, as he says, of getting some ice water. Reaching the ground floor, he passed by a room where some one was playing a harmonica. The door being ajar, he entered this room, actuated, apparently, by no other motive than childish curiosity, and found a boy, who was employed about the hotel either as a bell boy or porter, engaged in playing the instrument. Another boy who ran the hotel elevator

was also in the room. Both of these employés of the hotel seem to have been off duty at the time, and engaged in amusing themselves in a room that was not occupied by guests. As the boy Clancy entered the room, the boy who was playing the harmonica said to him, evidently in jest, "See here, young fellow; if you touch anything, here is what you will get," at the same time pointing a pistol at him. The pistol was accidentally discharged, the ball striking the boy in the head, fracturing "the frontal ethnoid and sphenoid bones of the head," and destroying one of his eyes. The ball also passed through the boy's thumb, but the injury did not prove fatal.

One paragraph of the complaint, on which the case was tried, alleged:

"That on or about the 12th day of January, 1902, the said father and mother of the plaintiff entered the said hotel of defendant with their said infant child, the plaintiff, as guests of defendant, for a temporary rest in said city at said hotel, and were received by the said defendants as the guests of the said innkeepers or hotel keepers; the defendants thereby contracting with the said father for and on behalf of said plaintiff, and with the plaintiff by implication of law, for his personal safety, kind treatment, and for all of the usual hospitalities, covenants, and agreements, and obligations due from an innkeeper and hotelkeeper to his guests."

Another paragraph of the complaint alleged, in substance, that it was the duty of the bell boy or porter, through whose acts as aforesaid the injury was sustained—

"To direct the guests of said hotel about said hotel, and to wait on, watch over, and protect said guests and their property and the property of the said hotel, and such other duties as are usually required of porters by innkeepers or hotel keepers, and imposed by law."

Another paragraph of the complaint alleged that said bell boy or porter, being a servant of the defendants and of said hotel, in that capacity, by the acts heretofore described—

"Violated all obligations of hospitality and patience due from said defendants, through said servants, to said infant guest, and the defendants thereby violated their agreement, duty, and obligation of law with and to the plaintiff."

On this state of facts and pleading, counsel for the plaintiff in error asserts a right of recovery against the defendants on two grounds: First, he contends that by receiving the boy and his parents as guests at the hotel the proprietors of the hotel undertook, like a common carrier of passengers, to protect him against injuries occasioned by the negligence or willful misconduct of their employés in and about the hotel, and that this contractual obligation of the defendants was violated. In the second place, counsel contends that when Lacey, the porter, pointed the pistol at the boy, he was guilty of a wrongful and negligent act; that he was engaged at the time in the performance of one of his duties as servant; and that on this ground the defendants are liable. It is argued that it was a part of Lacey's duty as a servant, when the child entered the room where he was playing the harmonica, to see that he did not disturb or handle any articles in the room; that a jury might well infer that the act which occasioned the injury was done by Lacey in the performance of this duty; and that the ordinary rule, "Respondeat superior," applies to the case.

We entertain no doubt that the act in question was in fact wrong-

ful and negligent, but the difficulty which we encounter in upholding this latter theory is that the evidence fails to show that Lacey had been charged with the duty of guarding such articles as may have been in the room where the accident occurred, or that the room contained any articles which the child could have injured or carried away, or that he had made any movement in that direction. All this is mere surmise, which will not suffice to sustain a verdict. So far as the evidence warrants an inference, the inference is that Lacey was not engaged at the time in the discharge of any duty for and in behalf of the defendants; that he was temporarily, at least, off duty, engaged in amusing himself; and that he pointed the pistol at the child in sport, to see how he would act, rather than to prevent him from touching or intermeddling with anything in the room. The act in question seems to have been prompted by a momentary impulse, and to have been done by Lacey for his own amusement, and to have been in no wise connected with the discharge of any duty or with the performance of any task that had been devolved upon him by the defendants. Under these circumstances we are of opinion that the proprietors of the hotel cannot be held accountable for the act in question on the second ground above stated, since it is too well settled to require the citation of any authority that the master is not responsible ordinarily for the negligent acts of his servant, unless they are committed while the servant is rendering some service for and in behalf of the master.

But counsel for the plaintiff insists that, although the defendants were not negligent in the employment of their servant, the bell boy, and although he was not acting in the course or within the actual or apparent scope of his employment when he discharged the pistol, yet the defendants are liable for the injury he inflicted, because it is a part of the contract between an innkeeper and his guest that the former will insure the safety of the person of the latter against injury from every act or omission of his servants. The crucial question here, therefore, is whether or not an innkeeper is an insurer of the safety of the person of his guest while the latter remains in his hotel against the negligent and willful acts of his servants, when they are acting without the course and without the actual or apparent scope of their employment.

An affirmative answer to this question would be in conflict with the decisions of the courts rendered prior to the time when the contract herein was made, and to our understanding of the law upon this subject as it then existed. The general rule of law governing the liability of innkeepers when these defendants made their agreement with the plaintiff, the rule which had received the approval of every court which had ever decided the question, so far as we have been able to discover, was that an innkeeper was not an insurer of the safety of the person of his guest against injury, but that his obligation was limited to the exercise of reasonable care for the safety, comfort, and entertainment of his visitor. Calye's Case, 4 Coke, 202, 206; Sandys v. Florence, 47 L. J. C. P. L. 598; Weeks v. McNulty, 101 Tenn. 499, 48 S. W. 809, 43 L. R. A. 185, 70 Am. St. Rep. 693; Curtis v. Dinneen (Dak.) 30 N. W. 148, 153; Sheffer v.

Willoughby, 163 Ill. 518, 521, 522, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483; Gilbert v. Hoffman, 66 Iowa, 206, 23 N. W. 632, 55 Am. Rep. 263; Overstreet v. Moser, 88 Mo. App. 72, 75; Stanley v. Bircher's Ex'r, 78 Mo. 245, 248; Stott v. Churchill (Com. Pl.) 36 N. Y. Supp. 476, 477; Sneed v. Morehead, 70 Miss. 690, 13 South. 235.

In another class of cases, those involving the liability of common carriers and of the operators of palace cars to their passengers, this measure of liability has in later years been extended to include responsibility for the willful and negligent acts of those to whom the carriers intrust the transportation of their passengers, such as brakemen, porters, and conductors, upon the ground that these servants, when upon the trains or steamboats, are engaged in the course or scope of their employment to conduct the safe transportation of the passengers, whatever they may be doing. The reasons for this extension of liability are well stated in Bass v. Chicago & Northwestern Ry. Co., 36 Wis. 450, at page 463, 17 Am. Rep. 495, and in Mallach v. Ridley (Sup.) 9 N. Y. Supp. 922, 2 Abb. N. C. 181.

In the former case the court said:

"These officers [the conductors and other servants in charge of the train] may be guilty of acts of arbitrary oppression, beyond endurance, towards passengers, which might warrant resistance. But we feel warranted by principle and authority to hold that, in the enforcement of order on the train, and in the execution of reasonable regulations for the safety and comfort of the passengers, and for the security of the train, the authority of these officers, exercised upon the responsibility of the corporations, must be obeyed by passengers, and that forcible resistance cannot be tolerated. They act on the peril of the corporation, and their own. Indeed, as that fictitious entity, the corporation, can act only through natural persons, its officers and servants, and as it of necessity commits its trains absolutely to the charge of officers of its own appointment, and passengers of necessity commit to them their safety and comfort in transitu, under conditions of such peril and subordination, we are disposed to hold that the whole power and authority of the corporation, pro hac vice, is vested in these officers, and that, as to passengers on board, they are to be considered as the corporation itself, and that the consequent authority and responsibility are not generally to be straitened or impaired by any arrangement between the corporation and the officers; the corporation being responsible for the acts of the officers, in the conduct and government of the train, to the passengers traveling by it, as the officers would be for themselves, if they were themselves the owners of the road and train. We consider this rule essential to public convenience and safety, and sanctioned by great weight of authority."

In the latter case the court declared:

"It was long held by the courts that a common carrier was not liable for a willful assault by one of its employés upon a passenger. This rule, however, has been abrogated upon the theory that the carrier invites the passenger to subject himself to the protection and care of the employé of the corporation, and under these circumstances the common carriers should be responsible for all the acts of the subordinates toward the passenger while under his custody and control."

Counsel for the plaintiff insists that the liability of the innkeepers should be extended in the case at bar even beyond that of common carriers, so that the defendants should be held liable for the injuries inflicted by the willful or careless act of their servant when he was not acting within the course or scope of his employment. The argu-

ment in support of this contention is that common carriers are liable for the negligent or willful acts of their servants to whom they intrust the care, custody, and control of the passengers they transport, and that the liability of innkeepers to their guests is similar to that of carriers to their passengers. There are many reasons, however, why this argument is not persuasive, and why it fails to demonstrate that an innkeeper insures the safety of the persons of his guests against injuries inflicted by his servants when they are not engaged in the discharge of their duties as employés.

While there are many loose statements in the books to the effect that the liability of common carriers to their passengers and the liability of innkeepers to their guests are similar, and while that proposition may be conceded, it is certain that the limits of these liabilities are by no means the same. A railroad company is liable to its passengers for a failure to exercise the utmost care in the preparation of its road and the operation of its engines and trains upon it, because the swift movement of its passenger trains is always fraught with extraordinary danger, which it requires extraordinary care to avert. But an innkeeper's liability for the condition and operation of his hotel is limited to the failure to exercise ordinary care, because his is an ordinary occupation fraught with no extraordinary danger. Sandys v. Florence, 47 L. J. C. P. L. 598, 600. It no more follows, from the similarity of the liability of the carrier to that of the innkeeper, that the latter is liable for the willful or negligent acts of its servants beyond the scope of their employment, than it does that the latter is liable for a failure to exercise the highest possible care to make his hotel and its operation safe for its guests, because the carrier must exercise that degree of care in the management of its railroad, engines and trains.

Again, there is a marked difference in the character of the contracts of carriage on a railroad or steamboat and of entertainment at an inn, and a wide difference in the relations of the parties to these contracts. In the former, the carrier takes and the passenger surrenders to him the control and dominion of his person, and the chief, nay, practically the only, occupation of both parties is the performance of the contract of carriage. For the time being all other occupations are subordinate to the transportation. The carrier regulates the movements of the passenger, assigns him his seat or berth, and determines when, how, and where he shall ride, eat, and sleep, while the passenger submits to the rules, regulations, and directions of the carrier, and is transported in the manner the latter directs. The contract is that the passenger will surrender the direction and dominion of his person to the servants of the carrier, to be transported in the car, seat, or berth and in the manner in which they direct, and that the latter will take charge of and transport the person of the passenger safely. The logical and necessary result of this relation of the parties is that every servant of the carrier who is employed in assisting to transport the passenger safely, every conductor, brakeman, and porter who is employed to assist in the transportation, is constantly acting within the scope and course of his employment while he is upon the train or boat, because he is one of those selected

by his master and placed in charge of the person of the passenger to safely transport him to his destination. Any negligent or willful act of such a servant which inflicts injury upon the passenger is necessarily a breach of the master's contract of safe carriage, and for it the latter must respond. But the contract of an innkeeper with his guest, and their relations to each other, are not of this character. The innkeeper does not take, nor does the guest surrender, the control or dominion of the latter's person. The performance of the contract of entertainment is not the chief occupation of the parties, but it is subordinate to the ordinary business or pleasure of the guest. The innkeeper assigns a room to his guest, but neither he nor his servants direct him when or how he shall occupy it; but they leave him free to use or to fail to use it, and all the other means of entertainment proffered, when and as he chooses, and to retain the uncontrolled dominion of his person and of his movements. The agreement is not that the guest shall surrender the control of his person and action to the servants of the innkeeper, in order that he may be protected from injury and entertained. It is that the guest may retain the direction of his own action, that he may enjoy the entertainment offered, and that the innkeeper will exercise ordinary care to provide for his comfort and safety. The servants of the innkeeper are not placed in charge of the person of the guest, to direct, guide, and control his location and action, nor are they employed to perform any contract to insure his safety; but they are engaged in the execution of the agreement of the master to exercise ordinary care for the comfort and safety of the visitor. The natural and logical result of this relation of the parties is that when the servants are not engaged in the course or scope of their employment, although they may be present in the hotel, they are not performing their master's contract, and he is not liable for their negligent or willful acts.

Moreover, the authorities in the cases involving the liability of common carriers, of owners of palace cars, of steamboats, and of theaters, upon which counsel for the plaintiff seems to rely, when carefully examined, are found to be cases in which the servants were acting within the course or scope of their employment, and they do not rest upon the proposition that the defendants in those cases were liable for the willful or negligent acts of their employés beyond that scope.

In Dwinelle v. New York Central, etc., R. Co., 120 N. Y. 117, 126, 127, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611, the porter of a sleeping car, who had taken up the ticket of a passenger, was held to be acting within the scope of his employment when he struck the passenger during an altercation between them relative to the return of the ticket.

In Stewart v. Brooklyn, etc., R. Co., 90 N. Y. 588, 591, 43 Am. Rep. 185, the court declared the limit of the company's liability to be "to protect the passenger against any injury arising from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger," and held that a driver of a street car, who was also the conductor, and who beat a passenger

in the car, was within the scope of his employment to carry the passenger safely when he committed the assault.

In Goddard v. Grand Trunk Railway, 57 Me. 202, 203, 2 Am. Rep. 39, a brakeman, who had authority to collect tickets, and who, after collecting one from a passenger, demanded another of him, and grossly insulted him because he declined to pay for his passage again, was held to have been acting within the scope of his employment, and the company was charged with the damages he inflicted.

So in Craker v. Chicago & Northwestern Ry. Co., 36 Wis. 657, 673, 17 Am. Rep. 504, a conductor who kissed a passenger; in Pendleton v. Kinsley, 3 Cliff. 416, 427, 428, Fed. Cas. No. 10,922, the clerk of a steamer who assaulted a passenger while trying to collect his fare; in Chicago & Eastern R. Co. v. Flexman, 103 Ill. 546, 42 Am. Rep. 33, a brakeman who struck a passenger because during a search for a lost watch he said he thought the brakeman had it; in Terre Haute & Indianapolis R. Co. v. Jackson, 81 Ind. 19, 22, a conductor or brakeman who drenched a passenger with water; in Campbell v. Palace Car Co. (C. C.) 42 Fed. 485, a porter of a sleeping car who made indecent proposals to a passenger; in Williams v. Palace Car Co., 40 La. Ann. 421, 4 South. 85, 8 Am. St. Rep. 538, a porter of a Pullman car who assaulted a passenger; and in Dickson v. Waldron (Ind. Sup.) 34 N. E. 506, 24 L. R. A. 483, 41 Am. St. Rep. 440, the ticket taker and special policeman of a theater, who, in endeavoring to sell the tickets to a customer, assaulted him—were all held to be, and undoubtedly were, acting within the scope of their various employments when they inflicted the injuries for which the defendants were made to pay.

When all these authorities, and others cited by counsel for the plaintiff, are carefully considered, it clearly appears that the controlling reasons why common carriers have been held liable for the willful or negligent acts of their servants in these cases are (1) that they owe to their passengers the highest degree of care, and (2) that during the transportation they intrust the entire care, custody, and control of their trains, steamboats, and passengers to these servants, and the passengers yield obedience and control of their movements to these servants, under conditions of peril and subordination in which the passengers are confined and helpless, and the servants in charge of the train are practically the vice principals of the defendants. Bass v. Chicago & Northwestern Ry. Co., 36 Wis. 450, 463, 17 Am. Rep. 495. There are no such reasons for the existence of the liability of innkeepers for the willful or negligent acts of their servants beyond the scope of their employment, and the argument of counsel in support of such an extension by analogy with the liability of common carriers fails (1) because innkeepers are not liable to their guests for extraordinary care, while carriers are liable to their passengers for the highest degree of care; (2) because innkeepers do not intrust to their servants the absolute control and dominion of their hotels and of the persons of their guests, nor do the latter surrender themselves to the dominion and direction of such servants; and (3) because the willful and negligent acts of their servants, for which carriers have been held liable, were committed in the discharge of the duties which

they were employed to perform, while those of the servants of innkeepers, now under consideration, were done outside the actual and the apparent scope of their employment.

In addition to the argument by analogy which we have been considering, our attention is called to the remarks of Chief Justice Shaw in Commonwealth v. Power, 7 Metc. 596, 601, 41 Am. Dec. 465, a case in which the question was whether a railroad company had the right to exclude a disorderly person from its railroad station, and Chief Justice Shaw, in discussing that question, said:

. "An owner of a steamboat or railroad, in this respect, is in a condition somewhat similar to that of an innkeeper, whose premises are open to all guests. Yet he is not only empowered, but he is bound, so to regulate his house, as well with regard to the peace and comfort of his guests, who there seek repose, as to the peace and quiet of the vicinity, as to repress and prohibit all disorderly conduct therein; and, of course, he has a right, and is bound, to exclude from his premises all disorderly persons, and all persons not conforming to regulations necessary and proper to secure such quiet and good order."

It is also called to the opinion of Judge Story, of the same tenor, in Jencks v. Coleman, 2 Sumn. 221, Fed. Cas. No. 7,258, a case which involved a similar question, to wit, the right of the owner of a steamboat to exclude a disorderly person therefrom; to the decision of the Supreme Court in Rommel v. Schambacher, 120 Pa. 579, 11 Atl. 779, 6 Am. St. Rep. 732, that an innkeeper who furnished liquor to make a man drunk, and then with gross carelessness permitted him to attach a paper to the back of one of his customers and to set it on fire in his plain sight, was liable for the injury; and to the opinions of various courts in cases in which the liability of innkeepers for the loss or destruction of the property of their guests was in question. These cases have been examined, but neither the decisions of the questions there presented, nor the opinions of the courts concerning them, are either decisive or persuasive in the consideration and determination of the question here under consideration, whether or not an innkeeper is an insurer of the safety of the person of his guest against the willful or negligent acts of his servants beyond the scope of their employment, because that question was not considered or determined, and clearly was not in the minds of the judges who rendered the decisions and opinions to which reference has been made. This is also true of all the cases, opinions, and expressions which have been cited by counsel for the plaintiff. To them all the declaration of Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257, applies in all its force:

"It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."

Finally, counsel for plaintiff presents for our consideration the opinion of the Supreme Court of Nebraska, rendered since the case in hand was argued and submitted to this court, in an action brought by the father of the plaintiff in this action for the damages which he suffered from the very accident here involved, and in which that court has held that the innkeepers were liable for the act of the bell

boy which inflicted the injury, although he was then acting beyond the course and scope of his employment. Clancy v. Barker, 98 N. W. 440. This opinion is entitled to, and it has received, great respect and grave consideration. But, after all, the question here is, not what the Supreme Court of Nebraska has made the law and the contract of innkeepers since the parties to this action made their agreement, but what that law was and what the contract between these parties was when their minds met upon the terms of their agreement. At that time no court had ever held, so far as our research and the authorities cited by counsel have disclosed the decisions, that the contract of an innkeeper was to insure the safety of the person of his guest against the negligent or willful acts of his servants without the scope of their employment. The pregnant fact that no case can be found in the entire field of English and American jurisprudence in which an innkeeper was ever held to be an insurer of the safety of his guest, or to be liable for the willful or negligent acts of his servants beyond the scope of their employment, is the most complete demonstration that this was not the law. If it had been, judgments founded upon it would not have been lacking. Every court that had ever decided the question had declared that the liability of the innkeeper was limited to the exercise of reasonable care, that it did not extend to a guaranty of safety, and hence that it extended only to the acts of his servants within the scope of their employment. This was declared to be the general rule of law in the digests and in the text-books. 16 Am. & Eng. Enc. of Law (2d Ed.) 546, 547, note 6.

In Calye's Case, 4 Coke, 202, 206, the court declared that:

"If the guest be beaten in the inn, the innkeeper shall not answer for it."

In Sandys v. Florence, 47 L. J. C. P. L. 598, 600, a case in which a ceiling fell upon a guest in a hotel, Mr. Justice Lindley said:

"I pass over the previous allegation that it was the defendant's duty 'to keep the said hotel in a secure and proper condition, so as to be safe for persons using the same as guests,' because I think that duty is too widely alleged, and that the defendant's duty is, not to insure his guests, but to see only that they do not suffer from want of reasonable and proper care on his part."

In Weeks v. McNulty, 101 Tenn. 496, 499, 48 S. W. 809, 43 L. R. A. 185, 70 Am. St. Rep. 693, an action for damages for the death of a guest in a hotel by fire, the court said:

"The general rule of law governing the liability of an innkeeper is that he is not an insurer of the person of his guest against injury, but his obligation is merely to exercise reasonable care that his guests may not be injured by anything happening through the innkeeper's negligence."

In Sheffer v. Willoughby, 163 Ill. 518, 521, 522, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483, a case in which an attempt was made to apply the rule of absolute liability for the loss of the property of a guest in support of a claim for damages caused by the administration of unwholesome food to his guest by the keeper of a restaurant, the court held that the limit of the latter's liability was for the failure to exercise reasonable care.

In Stanley v. Bircher's Ex'rs, 78 Mo. 245, 246, 248, an action was brought by the plaintiff, Stanley, against the executors of the estate of Bircher for injuries to her person resulting from her fall down an

elevator shaft of a hotel operated by Bircher.  She alleged that she
was a guest at this hotel, that it became his duty and that he agreed
to furnish safe accommodations for the reasonable wants of the
plaintiff and that he did not perform the duty or keep the agreement,
in that the door to the elevator pit was dangerously constructed and
negligently left open by Bircher and his servants, so that she walked
into it and was injured.  A demurrer was interposed to this com-
plaint on the ground that the cause of action did not survive the
death of Bircher.  Mark that the complaint clearly alleged a breach
of a contract to keep the guest safely, as well as a failure to discharge
the duty to exercise ordinary care as in the case at bar, and that the
question was whether or not the innkeeper's obligation included a
contract of safekeeping.  If it did, the cause of action survived, and
the action could be maintained; otherwise, it could not be.  The
Supreme Court of Missouri held that the obligation of an innkeeper
comprised no such contract, that the action could not be changed
from an action on the case for a breach of the duty to exercise ordi-
nary care to one for a breach of contract of safe-keeping by an
averment or proof of such contract and breach, because no such con-
tract arose out of the relation of innkeeper and guest.  That court
said:

"But it is claimed by counsel for plaintiff that the action is for the breach
of a contract, and that it is not an action on the case for injuries to the person.
The allusions in the petition to the formal contract between the plaintiff and
the proprietor of the hotel, whereby the plaintiff became a guest in the hotel,
cannot change the true character of the action.  In setting forth an action of
trespass on the case, the pleader often finds it proper, although not absolutely
necessary, to mention matters of contract connected with the tort, by way of
inducement and explanation.  In this case the relation of host and guest, which
originated in contract, explains how the defendant's testator came to owe the
plaintiff a duty.  That duty, however, the law imposes.  It is a public duty,
which is not defined by the contract.  Neither can the proprietor relieve him-
self from that duty by contract.  The action in truth is for a violation of the
duty which the law imposes, independent of the contract.  Neither the damages
nor the scope of the action can be measured or limited by the contract."

And in Curtis v. Dinneen, 30 N. W. 148, 149, 152, the Supreme
Court of Dakota Territory directly decided the very questions pre-
sented in this case in accordance with this general rule and in favor
of the innkeeper.  The complaint in that case alleged, among other
things, that:

"The defendant undertook, for a compensation paid her by the plaintiff, to
keep safely and from harm and in a proper manner this plaintiff while she
should remain in the plaintiff's inn or hotel, and that while the plaintiff was
stopping at the inn or hotel of the defendant this plaintiff was by the wrongful
and spiteful act of the defendant's servants greatly injured."

The evidence tended to show that one of the defendant's servants
assaulted and inflicted serious injury upon the plaintiff while she was
in the hotel as a guest, but the court held that the guest could not
recover, because the assault and battery, although committed by the
defendant's servant in her hotel, was not inflicted while the servant
was acting within the actual or apparent scope of his employment.

The result is that when the defendants made their contract to en-
tertain the plaintiff at their hotel the law was, and in our opinion it

still is (Rahmel v. Lehndorff [Cal.] 76 Pac. 659), notwithstanding the late decision of the Supreme Court of Nebraska to the contrary, that their agreement was to exercise reasonable care for his safety, comfort, and entertainment, and that their agreement did not include an insurance of his person against the willful or negligent acts of their servants beyond the course of their employment. A change of this law and an extension of the liability of the innkeepers now, after the execution of the contract, so as to make the agreement include such an insurance, is to make a new agreement for the parties after the event, and to impose upon the defendants a liability which they could not foresee and to which they did not assent. A retroactive decision, which makes and applies a new rule of law, and attaches another and unforeseen liability to a contract after its execution, is as vicious as an ex post facto statute.

The judgment below enforced the contract which the parties made in strict accordance with the law which governed it, and it is affirmed.

THAYER, Circuit Judge (dissenting). The important question in this case is whether an innkeeper is exempt from liability to one of his guests who is injured within the hotel by an act of gross negligence on the part of a servant of the innkeeper, because the servant, at the time he committed the negligent act, was not engaged in rendering any service for his master, but was momentarily off duty and awaiting orders. The majority of the court decide that question in the affirmative, holding, as I understand, that, if the proprietor of a hotel exercises ordinary care in the selection of his servants, he is not responsible to his guests for any of their acts committed, even within the hotel, no matter how rash, negligent, or brutal they may be, nor how seriously a guest may be injured, provided the servant was not at the moment engaged in some work for and in behalf of the master. I am unable to assent to this doctrine.

The relation existing between a carrier and a passenger has on numerous occasions been likened to that existing between an innkeeper and his guest. Thus, in Commonwealth v. Power et al., 7 Metc. 596, 601, 41 Am. Dec. 465, Chief Justice Shaw said:

"An owner of a steamboat or railroad in this respect is in a condition somewhat similar to that of an innkeeper whose premises are open to all guests. Yet he is not only empowered, but he is bound, to so regulate his house, as well with regard to the peace and comfort of his guests who there seek repose as to the peace and quiet of the vicinity, as to repress and prohibit all disorderly conduct therein; and, of course, he has a right and is bound to exclude from his premises all disorderly persons and all persons not conforming to regulations necessary and proper to secure such quiet and good order."

This remark was quoted with approval by Ryan, C. J., in Bass v. Chicago & Northwestern Ry. Co., 36 Wis. 450, 459, 17 Am. Rep. 495.

Also in Jencks v. Coleman, 2 Sumn. 221, 226, Fed. Cas. No. 7,258, Mr. Justice Story compared the rights and duties of a carrier with those of an innkeeper, upon the evident assumption that the relation of an innkeeper to his guest was practically like that of a carrier to a passenger.

In Norcross v. Norcross, 53 Me. 163, 169, the Supreme Court of

that state remarked, when considering an innkeeper's liability for the property of his guest, that:

"Innkeepers are under the same liability as common carriers."

And in the case of Dickson et al. v. Waldron, 34 N. E. 506, 510, 24 L. R. A. 483, 41 Am. St. Rep. 440, the Supreme Court of Indiana remarked:

"But common carriers, innkeepers, merchants, managers of theaters, and others who invite the public to become their patrons and guests, and thus submit personal safety and comfort to their keeping, owe a more special duty to those who may accept such invitation. Such patrons and guests have a right to ask that they shall be protected from injury while present on such invitation, and particularly that they shall not suffer wrong from the agents and servants of those who have invited them."

Also, in the case of Pinkerton v. Woodward, 33 Cal. 557, 585, 91 Am. Dec. 657, it was held that the liability of innkeepers and of common carriers is founded upon the same considerations of public policy in the one case as in the other.

In the absence of express authority on this point, I should be of opinion that an innkeeper is under the same obligation to protect his guests against the wrongful and discourteous acts of his servants, committed within or upon his premises, as a carrier to protect its passengers against like acts of its employés. A guest comes to a hotel on the invitation of the proprietor, and for the latter's profit and advantage, and upon the implied understanding that while on the premises as a guest he shall receive courteous and considerate treatment from the proprietor and all persons who are his servants, or, at least, upon the implied understanding that while beneath his roof the life of the guest shall not be imperiled by the rash, inconsiderate, or wrongful acts of those who are his servants. The general law of hospitality would seem to impose such an obligation upon an innkeeper. He promises suitable entertainment to all his guests, as well as respectful, considerate, and proper treatment on the part of all of his servants. If a servant of a hotel, when off duty, should meet a guest outside of the hotel, and not on the premises, and there assault him, it is doubtless true—although the case at bar requires no decision on that point—that the innkeeper could not be charged with responsibility for the servant's conduct; and it is probably true that the innkeeper would not be responsible for an assault committed on one of his guests within the hotel by a stranger, provided he has taken all reasonable precautions to prevent such occurrences by excluding disorderly persons from his premises. But in my opinion the law casts on the innkeeper an obligation to see to it that his guest is not injured, while within the hotel, by the wrongful, inconsiderate, or negligent acts of those who are his servants.

It is said in the opinion of the majority that an innkeeper is not an insurer of the safety of the person of his guest while within the hotel. The same may be said of carriers. They do not insure the personal safety of passengers, but only to exercise a very high degree of care, or, as it is sometimes said, "the utmost care," for their protection. Yet it is now well settled that this duty is so comprehensive that it renders the carrier responsible for injuries inflicted on passengers so

long as the relation of carrier and passenger exists, not only by the negligent acts of its servants done while in the performance of some duty, but also by their willful and wrongful acts, such as assaults committed on passengers or indignities offered to them. The obligation also rests on the carrier to protect its passengers while in transit, not only against the willful and wrongful acts of its own servants, but so far as practicable from acts of violence committed by strangers and co-passengers. It makes no difference, as it seems, what motive may have actuated a servant of the carrier in committing the wrongful act complained of, or whether it was done in conformity with the carrier's orders, or in express violation thereof and on the sole responsibility of the servant; for, if it was done while the relation of carrier and passenger existed, the carrier is responsible, and it cannot defend on the ground that the act of its servant was done without its sanction and at a moment when he was not rendering any special service to the carrier. A different rule obtains, of course, as respects willful and wrongful acts done by employés to those to whom the carrier at the time owed no other or greater duty of protection than it owed to every other person in the community; but, when the peculiar relation of carrier and passenger exists, the modern rule appears to be that the carrier is under an obligation to see to it that a passenger suffers no harm on account of the wrongful and willful acts of its servants, and that every practicable precaution is taken to protect him against the wrongful acts of strangers and co-passengers. Stewart v. Brooklyn & Crosstown Railroad Co., 90 N. Y. 588, 43 Am. Rep. 185; Dwinelle v. New York Central & H. R. R. R. Co., 120 N. Y. 117, 125, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611; Goddard v. Grand Trunk Ry., 57 Me. 202, 213, 2 Am. Rep. 39, and cases there cited; Bryant v. Rich, 106 Mass. 188, 8 Am. Rep. 311; Spohn v. Missouri Pacific Ry. Co., 87 Mo. 74, 80; Craker v. Chicago & Northwestern Ry. Co., 36 Wis. 657, 17 Am. Rep. 504; Pendleton v. Kinsley, 3 Cliff. 416, 427, Fed. Cas. No. 10,922; Chicago & Eastern R. R. Co. v. Flexman, 103 Ill. 546, 42 Am. Rep. 33; Terre Haute & Indianapolis R. R. v. Jackson, 81 Ind. 19.

Now, it is true that a hotel is an immovable structure and does not run on wheels like a train of cars; but in all other respects the relation existing between an innkeeper and his guest is like that existing between a carrier and passenger, and this fact has always been recognized, as shown by the cases above cited. An innkeeper, like a carrier, is engaged in a quasi public service. When he embarks in the business of keeping a hotel, he is bound to provide entertainment for all travelers who seek a place of rest and refreshment, provided they come to him in a fit condition to be entertained as guests, and are able to pay the customary charges. Unless relieved of the obligation by an express statute, the innkeeper, like the carrier, is an insurer of his guests' baggage against loss occasioned otherwise than by an act of God or the public enemy. American & English Ency. of Law (2d Ed.) vol. 16, p. 528, and cases there cited. Besides, an innkeeper is vested with the same power of control over his premises which the carrier exercises over such means of public conveyance as he provides. An innkeeper has the right to exclude from his premises all

disorderly persons, and to suppress all disturbances therein that tend to disturb his guests or imperil their safety, and according to the decision of Chief Justice Shaw in the case above cited (7 Metc. 596, 601) it is his common-law duty to exercise this power. Aside from these considerations, the innkeeper, like the carrier, has the exclusive right to select all of the persons who are to aid him in the discharge of his quasi public functions. I have been unable, therefore, to discover any sufficient reason why he should not be held responsible to his guests for the consequences of any willful and wrongful acts of his servants, committed within the hotel, to the same extent that the carrier is responsible to his passengers for like wrongful acts of its servants; and within the authorities above cited a carrier would be clearly responsible to one of its passengers for an injury inflicted by one of its employés under such circumstances as those disclosed in the present case.

Relative to the authorities cited in the majority opinion and not already referred to, this may be said:

Calye's Case, 4 Coke's Rep. 63, 66, contains the single detached statement that, "if the guest be beaten in the inn, the innkeeper shall not answer for it." But it does not say by whom beaten, whether by a servant of the innkeeper or by a stranger. This, however, is a very old case, decided in 1584, and the statement quoted is purely dicta, since the case involved no question respecting the liability of an innkeeper for an assault committed upon a guest within the hotel. Moreover, as the learned editor of the American & English Ency. of Law remarks, in substance (vide vol. 16 [2d Ed.] p. 545), it may well be doubted whether the statement above quoted would be accepted at the present day as authority for the doctrine which it enunciates, since the modern authorities are opposed to the view that an innkeeper cannot be held responsible for an assault committed upon one of his guests within the hotel by a servant, or even by a stranger when the innkeeper has not taken proper care to exclude disorderly persons from his premises.

Curtis v. Dinneen (Dak.) 30 N. W. 148, was a case in which a guest of a hotel kept by a married woman sought to hold her responsible for an assault and battery committed by her husband without her consent or ratification. The husband was living with the wife in the hotel, as he had a right to do, and was assisting her to operate it, so that the case was embarrassed by the existence of the marital relation; the court holding that under the circumstances the wife could not be held responsible for the tort of the husband.

The other cases that are referred to are without exception cases where it was sought to hold the innkeeper responsible for some defect in the hotel premises, and in one of them (Sandys v. Florence, 47 L. J. 598, 600) it was remarked arguendo, in discussing a demurrer to the complaint, that an innkeeper's duty "is not to insure his guests, but to see only that they did not suffer from want of reasonable and proper care on his part." None of the cases, however, discuss the particular question which is presented in the case at bar, whether an innkeeper is liable to his guest for the reckless conduct of one of his servants committed upon the hotel premises, whereby the life of the

guest is jeopardized.  In my judgment an innkeeper ought to be held liable for an act of that nature, and as respects that question I concur in the view which was expressed by the Supreme Court of Nebraska in Clancy v. Barker, 98 N. W. 440, that was decided upon the same state of facts which this record discloses.

I think the judgment below should be reversed, and a new trial ordered.