KATHRYN MCMAHON, APPELLEE, V. REGIS HOTEL COMPANY, A CORPORATION, APPELLANT.

25, N. W. 2d 24

FILED NOVEMBER 22, 1946. No. 32072.

Kennedy, Holland, DeLacy & Svoboda and L. J. Tierney, for appellant.

Edward T. Hayes, Joseph M. Lovely, and Emmet S. Brumbaugh, for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and POLLOCK, District Judge.

PAINE, J.

This is an action for damages for personal injuries sustained by a hotel guest in a fall from a small bench in her room, from which accident she suffered serious injuries. The jury returned a verdict for $7,500, for which amount a judgment was at once entered by the trial judge. Motion for a new trial being overruled, defendant appealed.

The record discloses that the plaintiff, Kathryn McMahon, was 68 years old at the time of the trial, weighed 145 pounds,

was five feet four inches tall, and had been a telegraph operator in the employ of the Western Union for 42 years, and at the time of the injury she was drawing a salary of $160 a month, but was drawing more at the time of the trial. Her hours of work were from 8:00 a.m. to 4:30 p.m., and she was off all day Sundays and afternoon on Saturdays. The office where she worked was at Fourteenth and Farnam Streets, Omaha, in the W. O. W. Building, and the Regis Hotel was located on Sixteenth Street, between Farnam and Harney.

She rented a room at the Regis Hotel one fall and the following April she moved out to a room in the residence section for the summer, but in the fall of that year she moved back to the Regis Hotel and was given room No. 313, and had lived there continuously for the last five or six years. Her room was furnished with two upholstered chairs, a dresser, a couch or day bed, a bench, and writing table. She has visited in other rooms in the same hotel and they furnish a similar bench to the one introduced in evidence. It is a substantial bench, eighteen inches high, standing on four legs, having four 1-inch by 3-inch pieces of wood making the frame, the top of the bench being made up of four strong slats 2½ inches wide, and 17½ inches long. The dimensions of the top of this bench are 14 inches by 20 inches in size. There are no nails or screws in sight, but the parts appear to be fastened together by dowel pins, or mortised, which are then glued firmly together.

Plaintiff usually used this bench to sit on at the desk, as it was more convenient than the upholstered chairs. Later on she brought two upholstered chairs, one a rocker, down from her sister's home and had the hotel take out its two chairs. It was impossible to take the chairs into the closet to stand on to reach the shelf, and she always used this bench for that purpose. When she first moved into the room the closet had one shelf in it, about six feet from the floor, and later they put in another shelf for her, which was about a foot higher. She had to use the bench to reach her hats

or clothing on either shelf.

The accident occurred on Sunday, January 16, 1944, at about 10:30 in the morning. She had returned from church and took this bench into the closet to get a hat from the back of the lower shelf. She stepped up on the bench with both feet, and was standing about in the middle of it when there was a cracking sound, the bench broke, and threw the plaintiff to the floor. She laid on the floor for about five minutes, then managed to crawl to the couch, and called her brother, Jack McMahon, from her telephone at the head of the bed, and he came with her niece. She testified that she was suffering terrible pain in her back. A doctor was called and taped her up, and she was taken to the hospital in an ambulance, where she remained five days, suffering pain all the time. X-rays were taken, she was bandaged, and had heat applications. She was then taken to her sister's home. She was under treatment of the doctor for two weeks at her sister's home, then returned to the Regis Hotel, but was not able to work for another week.

On cross-examination she testified that, as she was going out in the afternoon, she was getting a hat down from the shelf; that the bench was partly in the closet and partly outside; that she stepped on it in the center, and when she put her foot on the bench it seemed all right, but when she had put both feet on and started to reach for her hat she heard it creak and started to get down. She fell outside of the closet on her back, but did not hit her head. She said the bench seemed perfectly solid. She detected nothing wrong; it was always solid.

Dr. E. A. Connolly is a Union Pacific surgeon, and testified that he had known the plaintiff for 25 years. He was called to her room at the Regis Hotel, and ordered her sent to St. Catherine's Hospital, where X-rays were taken. She had a compression fracture of the third lumbar vertebra. The vertebrae had "jackknifed," one vertebra being squeezed about half its normal size. In addition to the injury to the bone, she had injuries to the muscles and nerves and blood

vessels. Her condition is permanent, and there will be a new bone formation, in which three of the lumbar vertebrae will be grown together.

Katherine Lester testified that she was the housekeeper at the Regis Hotel. She was sent to plaintiff's room after the accident by the manager. The witness took the broken bench out of the room. It was taken to the carpenter shop and was fixed the next day. She denied that she made the statement at that time, "I'm going to take it out before someone breaks his neck. I don't know how it got in here." She said there was no other furniture to stand on in the room except this bench, which she used for a desk chair. The bench in question was a grip bench, and the break was a new break. She testified, "If it had been an old break it would have been dirty." Only one leg was broken.

John J. McMahon is in the wholesale business of selling laundry and dry cleaning supplies, and is 65 years of age. He said the hotel room was about 15 feet long by 8 or 10 feet wide, with space out for a closet and bathroom. When he arrived at the hotel his sister was on the day bed and seemed to be in great pain. He called the doctor. He examined the bench and found that two wood dowel pins that connect the board at the end with the legs on one side were broken, and on the other side one of the dowel pins was broken and the other was pulled out. One showed a fresh break, because it had splinters, and one was soiled from age. To look at the bench one would not know it was broken. He testified that the housekeeper looked at it and said, "I'll say it's broken, it's falling to pieces," and that she also stated, "I'm going to take this out, someone is liable to break their neck on it," and also said, "I don't know how it ever got in here." Some of these statements were denied by the housekeeper.

The leg was originally attached by dowel pins and glue. The manager testified that he had no knowledge of anything being wrong with the baggage stand before the accident. The rooms are inspected by the housekeeper every

week or ten days, such inspection covering cleanliness, condition of the room, furniture, lights and fixtures. If anything is wrong it is reported. Every room in the hotel has such a baggage stand. The manager testified that, outside of chairs, nothing other than the bench was furnished to reach anything on the shelves. No instructions were ever given to guests that they were not to use the bench for any other purpose than to deposit their baggage on. The guests were not instructed that to get anything off the shelves they could call the housekeeper and get a ladder.

At the close of the evidence the defendant renewed the motion which had been made at the close of the plaintiff's case that the court instruct a verdict for the defendant, and set out 15 grounds to support said motion. In the motion for new trial, defendant set up, among other things: (7) That the verdict and judgment are not sustained by sufficient evidence; (12) the court erred in overruling defendant's motion to direct a verdict in favor of the defendant or dismiss plaintiff's case, made at the close of defendant's case; and (13) the court erred in overruling defendant's objections to evidence adduced by the plaintiff. The defendant also set out 51 assignments of error in his brief.

The first case cited and relied upon by the plaintiff is the case of Burchmore v. Antlers Hotel Co., 54 Colo. 314, 130 P. 846, in which the plaintiff, a resident of Boston, was one of a party of 175 making a tour across the country, and stopped in Colorado Springs. Because of the size of the party, the hotel management was required to use camp chairs to have enough seats for all guests, and the plaintiff was assisted by a waiter, sat down in one of these camp chairs, which collapsed and precipitated the plaintiff to the floor, causing certain injuries. A verdict was returned for the defendant, which was reversed because of errors in giving certain instructions which denied substantial rights to the plaintiff. It was held in this case: "An inn-keeper invites his guest to occupy a chair, which by reason of its defective condition collapses, precipitating the guest to

the floor. The inn-keeper is liable if by reasonable care he would have known of the defect, even though he has no actual knowledge thereof."

In our opinion, there is a striking difference between this case cited and the case at bar, where there was a solid, seemingly substantial bench, which had been used for years by the plaintiff, and if it had any defect it was clearly a latent defect.

"Latent defects which are concealed, and an incident to ordinary wear and tear, and so developed as to render discovery impossible, in the exercise of ordinary care, are casualties which no man can avoid without the exercise of extraordinary care and vigilance which the law does not impose." Knies v. Lang, 116 Neb. 387, 217 N. W. 615.

In the Antlers Hotel case, to meet an emergency they had brought in and were using emergency camp chairs, entirely unsuited to be used for guests at dinner in a dining room, but made for "happy-go-lucky" use around an outdoors campfire.

The defendant was not an insurer of the safety of the plaintiff, but owed her only the duty of ordinary and reasonable care.

"The law imposes a duty on an innkeeper or similar proprietor to furnish safe premises to his patrons and to provide articles of furniture which may be used by them in the ordinary and reasonable way without danger. Generally, however, his duties and liabilities in this respect are not those of an insurer, and extend only to the exercise of reasonable care which must be determined from the circumstances." 28 Am. Jur., Innkeepers, § 56, p. 578.

In the case of Clancy v. Barker, 131 F. 161, we have a case in which a six-year-old boy, stopping with his parents at the Barker Hotel in Omaha, wandered into a room where a bellboy and an elevator boy were loafing off duty, and in an effort to scare the six-year-old boy they pointed a pistol at him, which was accidentally discharged, destroying one of his eyes. It was held that innkeepers are not insurers

of the safety of the persons of their guests. The limit of their liability is for the exercise of reasonable care for the safety, comfort and entertainment of their visitors.

In the case of Kelley v. Luke, 140 Neb. 283, 299 N. W. 593, an invitee fell in a hotel in walking from one level to another. The judgment obtained was reversed and the case dismissed. In the opinion two late cases are cited in which directed verdicts for the defendant were affirmed by this court, to wit, Pierce v. Burlington Transportation Co., 139 Neb. 423, 297 N. W. 656, and Lepley v. Von Dorn, 139 Neb. 410, 297 N. W. 642, and in the case first cited it was said that a hotel must be kept reasonably safe for all persons invited to use its facilities, but the proprietor of a hotel is not an insurer against accidents. There was a failure to prove any negligence on the part of the hotel company.

In the case of Schlemmer v. Stokes, 47 Cal. App. 2d 164, 117 P. 396, a child three years of age leaned against a screen in a window and fell. The infant's mother had opened and closed the screen and had noticed nothing wrong, but the infant's father after the accident said the wood appeared to be rotten. The jury returned a verdict for the defendant. An appeal was taken from the order of the trial court granting a new trial, and the order was reversed. It was held that an innkeeper is not an insurer of the safety of a guest, but owes him the duty of exercising reasonable care to keep the premises in a safe condition, and the plaintiff in such an action has the burden of establishing that the innkeeper negligently failed to exercise reasonable care. In the text it is said that the record discloses the positive and uncontradicted evidence that the screen had been inspected, painted and repaired and the employee noticed nothing wrong with it; that the mother in opening and closing the screen noticed nothing wrong with it. The fact that after the accident the father said the wood appeared to be rotten would not give adequate support for a finding of failure by the defendant to use reasonable care, in view of the other evidence presented

"and the admitted fact that the defect in the wood, if any, was latent."

The defendant has cited many cases involving the relationship of master and servant, but we do not think they have application to a guest case such as this.

In the instant case, the bench from which the plaintiff fell had been frequently inspected and no defect observed by the employees of the hotel, whose duty it was to promptly remove weak or dangerous furniture from the guests' rooms to the repair shop. Plaintiff failed to prove that the defendant knew, or should have known, of any defective condition existing in this simple piece of furniture.

Plaintiff failed to meet the burden resting upon her of proving that the defendant negligently failed to exercise ordinary and reasonable care for the safety of the plaintiff.

Upon the record made in this case, the court erred in not directing a verdict for the defendant, for in our opinion plaintiff failed to prove a case, and the verdict and judgment based thereon should be set aside and the action dismissed.

REVERSED AND DISMISSED.